# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2888

_____

Dakota, Minnesota & Eastern Railroad Corporation d/b/a Canadian Pacific

*Petitioner*

v.

U.S. Department of Labor Administrative Review Board

*Respondent*

Mark Riley

*Claimant - Intervenor*

_____

Petition for Review of an Order
of the Department of Labor

_____

Submitted: October 15, 2019
Filed: January 30, 2020

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

Dakota, Minnesota and Eastern Railroad Corp., doing business as Canadian Pacific ("CP"), petitions for review of a final decision of the Department of Labor's Administrative Review Board ("ARB") affirming the decision of the administrative

law judge ("ALJ"). The ARB ruled that CP violated the whistleblower retaliation provisions of the Federal Railroad Safety Act ("FRSA") when it suspended locomotive engineer Mark Riley for his untimely reporting of a "work-related personal injury" or a "hazardous safety or security condition." 49 U.S.C. §§ 20109(a)(4), (b)(1)(A), (d). The statute requires an employee claimant to prove that protected activity such as reporting an injury or unsafe condition was a "contributing factor in the [employer's] unfavorable personnel action." § 42121(b)(2)(B)(i). CP argues the ARB and the ALJ committed legal error in refusing to follow Eighth Circuit rulings that "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." Kuduk v. BNSF Ry., 768 F.3d 786, 791 (8th Cir. 2014). We agree and therefore grant the petition for review.

## I. Background

At 2:00 a.m. on July 5, 2012, a unit train consisting of three locomotives and eighty one cars loaded with ethanol arrived at CP's large terminal in Bensenville, Illinois, a Chicago suburb south of O'Hare Airport. The train's crew was locomotive engineer Riley at the controls and assistant locomotive engineer John Bollman, both based in Dubuque, Iowa. The weather was hot, the old locomotive noisy, and Riley was instructed to bring the train in on track five of the Dog Yard, an unfamiliar location. With Bollman riding on the front of the locomotive to line up switches, Riley moved the train slowly from switch to switch until he stopped at a switch and yelled to Bollman to tell him if this was track four or track five. Bollman did not answer or Riley could not hear his answer so Riley leaned out the window and yelled at Bollman repeatedly. According to Riley, Bollman then entered the locomotive, hit Riley in the chest with his lantern, punched him on the top of the head, and screamed at him. According to Bollman, Riley was shouting expletives and insults, so Bollman went into the cab to tell him to stop, accidentally hit Riley with the lantern when it slipped out of his hand, and did not punch Riley. The two calmed down, finished

yarding the train, and went to their hotel rooms at 4:25 a.m. for a mandatory twelve-hour rest period. Riley did not report the altercation with Bollman to any CP supervisors in Bensenville.

Riley testified that, in his hotel room, he attempted to call his immediate supervisor in Dubuque, trainmaster Jeremiah Christensen, sent a text telling a co-worker about the altercation, and fell asleep. In a 12:20 p.m. phone call, Riley told Christensen he had been assaulted and did not want to work with Bollman again. Christensen said, "I need you to make the official report so that I can deal with him." Riley told Christensen he did not want to get Bollman fired and needed time to think about making a formal report. Riley then called several co-workers, friends, and his brother to ask for advice about whether to make a report; all but one said he should report the assault. Riley called Christensen back at 2:38 p.m. and said, "Okay, I'll make your formal complaint." He later discovered a bruise on his chest where the lantern hit him and added that to his complaint.

CP immediately brought Riley and Bollman back to Dubuque and interviewed them separately. Riley accused Bollman of assault. Bollman made a cross complaint against Riley. On July 6, Mike Morris, a CP trainmaster based in Mason City, Iowa, wrote Riley and Bollman to advise that Morris would conduct a "formal investigation session" on July 16 "to ascertain the facts and determine your responsibility, if any, [for] your alleged involvement in a physical altercation . . . and your alleged failure to promptly report said incident to your supervisor." Consistent with the governing collective bargaining agreement, Bollman was represented at the hearing by a union representative and Riley by a trusted co-worker. After the hearing, Morris recommended to CP's decision makers that both Riley and Bollman be terminated for multiple CP rule violations, including late reporting and engaging in physical and verbal altercations.

-3-

On August 21, CP sent Riley a decision letter stating that "the transcript established your failure to promptly report the incident," dismissal "is certainly warranted" because Riley had been returned to service in February 2010 under a "last chance" agreement, but CP "decided to exercise management discretion and allow you to remain an employee."[1]  However, the time Riley was withheld from service during the investigation (forty seven days) "will be assessed as formal discipline." That same day, CP terminated Bollman for violating the General Code of Operating Rules and the Safety Rule Book for Field Operations.  The union appealed Riley's discipline to the Public Law Board, an arbitration panel established under the Railway Labor Act.  The panel upheld the discipline but reduced it to a fifteen day suspension.

Riley filed this FRSA retaliation claim with the Department's Occupational Safety and Health Administration ("OSHA").  See 29 C.F.R. § 1982.103-04.  To establish a prima facie case of unlawful FRSA retaliation, an employee must show, by a preponderance of the evidence:  "(i) he engaged in a protected activity; (ii) [the rail carrier] knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action."  Kuduk, 768 F.3d at 789.  In November 2013, after an investigation, the Secretary of Labor's Acting Regional Administrator dismissed Riley's complaint, finding that his protected activity of filing an injury report was not a contributing factor in the adverse disciplinary action, and that CP established a legitimate, non-retaliatory reason for its disciplinary decision.  Although Riley was entitled to file a "kick-out" action in district court for *de novo* review because the Secretary had not

_____

[1]Sections 1.1.3 and 1.4 of CP's General Code of Operating Rules require employees to promptly report to the proper supervisor "any accidents; personal injuries . . . or any unusual condition that may affect the safe and efficient operation of the railroad," and "any condition or practice that may threaten the safety of trains, passengers, or employees, and any misconduct or negligence that may affect the interest of the railroad."

acted on his complaint in 210 days, see 49 U.S.C. § 20109(d)(3), he instead petitioned for administrative review and a *de novo* hearing before a Department of Labor ALJ. See 29 C.F.R. § 1982.106.

At the evidentiary hearing, Riley introduced no evidence that the CP decision makers, or any other supervisor, intentionally discriminated against Riley because he engaged in the protected activity of *filing* an injury or unsafe condition report. Rather, in his Closing Brief, Riley argued:

> [CP] only found out about the incident involving Mr. Riley and Mr. Bollman because Mr. Riley reported the attack and his injury to [CP]. It logically follows that if Mr. Riley had not reported the incident, [CP] would not have known about it and could not have taken any adverse action against Mr. Riley. . . . Clearly, Mr. Riley's reports were a contributing factor to the adverse actions [CP] took against Mr. Riley.

Citing only prior decisions by the ARB and other circuits, including Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152 (3d Cir. 2013), the ALJ adopted this argument and ruled that Riley had satisfied the contributing-factor element of his prima facie case:

> Complainant need not demonstrate the existence of a retaliatory motive on the part of [CP] in order to establish that his disclosure of the workplace injury was a contributing factor to his suspension. . . . Neither motive nor animus is required to prove causation under FRSA as long as protected activity contributed in any way to the adverse action.
>
> . . . [CP] became aware of the injury when [Riley] came forward, albeit several hours later. In other words, Mr. Riley's report of the attack and resulting injury influenced [CP's] decision to investigate the timeliness of Mr. Riley's reporting of the underlying facts of how his injury occurred. Where such a report sets the subsequent investigation and disciplinary process in motion, *this chain of events is sufficient*

*evidence of a contributing factor*. Therefore, I find the protected activity was a contributing factor in the adverse personnel action in this case.

. . . [A] case is established here because the basis for [Riley's] suspension cannot be discussed without reference to the protected activity. Simply put, [Riley's] reporting of the injury *set in motion the chain of events* eventually resulting in the investigation and is *inextricably intertwined* with the eventual adverse employment action.

(Emphasis added; citations omitted.) The ALJ concluded that CP failed to establish an affirmative defense and therefore Riley's disciplinary suspension violated 49 U.S.C. §§ 20109(a)(4), (b)(1)(A).

On appeal to the ARB, CP argued the ALJ erred in adopting a chain-of-events analysis contrary to controlling Eighth Circuit precedent. The ARB nonetheless upheld the ALJ's analysis of the contributing factor issue:

Because it is impossible to separate the cause of Riley's discipline -- for filing his injury report late -- from his protected activity of filing the injury report, the two are *inextricably intertwined* and causation is presumptively established as a matter of law. . . . [A] case is established here because the basis for [Riley's] suspension cannot be discussed without reference to the protected activity. [As the ALJ explained,] "[s]imply put, [Riley's] reporting of the injury *set in motion the chain of events* eventually resulting in the investigation and is *inextricably intertwined* with the eventual adverse employment action."

(Emphasis added.) In response to CP's argument that Kuduk and Eighth Circuit cases following Kuduk require proof of intentional retaliation and "more than a temporal connection," the ARB stated that Kuduk "is not analogous." In that case, the ARB correctly noted, plaintiff's protected activity "was completely unrelated to the . . . incident that led to his discharge." By contrast, in this case "Riley's injury and safety reports were both close in time to his discipline and inextricably intertwined

therewith." The ARB's opinion included a lengthy footnote arguing that <u>Kuduk</u>'s intentional retaliation standard "is both conclusory and contrary to the weight of precedent" and that <u>Kuduk</u> erred in adopting the Supreme Court's causation standard in <u>Staub v. Proctor Hospital</u>, 562 U.S. 411 (2011), because the FRSA "does not require a complainant to 'demonstrate the employer's retaliatory motive.'"

## II. Discussion

CP petitions for review of the ARB's final agency action, raising numerous issues. We address only one, the ARB's analysis of the contributing factor element of Riley's prima facie case using a legal causation standard contrary to controlling Eighth Circuit precedents. Consistent with Administrative Procedure Act standards, we will set aside agency action that is "not in accordance with law." 5 U.S.C. § 706(2)(A); <u>see</u> 49 U.S.C. § 20109(d)(4); <u>BNSF Ry. v. U.S. Dep't of Labor Admin. Review Bd. (Carter)</u>, 867 F.3d 942, 945 (8th Cir. 2017).

The ARB's reasoning is both contrary to our governing precedents and fatally flawed. The FRSA prohibits a rail carrier from *discriminating* against an employee for engaging in protected activity. 49 U.S.C. § 20109(a). In <u>Staub</u>, the Supreme Court noted that intentional torts such as this require a showing that a supervisor's "discriminatory animus" was a causal factor of the ultimate employment action. 562 U.S. at 420-21. Applying that ruling to FRSA retaliation claims, we held in <u>Kuduk</u> that "the contributing factor that an employee must prove is intentional retaliation prompted by the employee engaging in protected activity." 768 F.3d at 791. To establish this element of his prima facie case, the employee does not have to conclusively prove retaliatory motive but must show more than temporal proximity between the protected activity and the adverse action. <u>Id.</u> at 791-92.

In <u>Heim v. BNSF Ry.</u>, 849 F.3d 723, 727 (8th Cir. 2017), we confirmed that a FRSA plaintiff must prove "intentional retaliation prompted by the employee

engaging in protected activity." We expressly rejected the contention that, when an employer learns about an employee's conduct warranting discipline in a protected injury report, the report and the discipline are "inextricably intertwined" and this factual connection is "sufficient to establish the contributing-factor element of his prima facie case." In Blackorby v. BNSF Railway, 849 F.3d 716, 721-22 (8th Cir. 2017), we again followed Kuduk's holding that "the 'essence' of the FRSA's employee-protections provision is 'discriminatory animus,'" rejecting arguments by plaintiff and the Secretary of Labor that we follow the Third Circuit's decision in Araujo, a contention considered and rejected in Kuduk. In Loos v. BNSF Railway, we again held that an FRSA plaintiff "must show that intentional retaliation prompted by a protected activity was a contributing factor." 865 F.3d 1106, 1112 (8th Cir. 2017), rev'd on other grounds, 139 S. Ct. 893 (2019); accord Hess v. Union Pac. R.R., 898 F.3d 852, 858 (8th Cir. 2018); Gunderson v. BNSF Ry., 850 F.3d 962, 969 (8th Cir. 2017).

In BNSF Railway (Carter), we again held that the ALJ's "chain-of-events theory of causation is contrary to judicial precedent." 867 F.3d at 946. Although the ARB had declined to endorse that theory, we reversed its final order granting FRSA relief "because the ARB lacked critical fact findings needed to affirm the ALJ's decision when applying the appropriate legal standard." Id. at 948.

In this case, the ARB did not even attempt to apply the appropriate Eighth Circuit legal standard, and its chain-of-events causation analysis is even more flawed than in BNSF Railway (Carter). This case is unlike the common FRSA retaliation case where the employee's protected activity was unrelated to the conduct for which he or she was disciplined. See, e.g., Kuduk, 768 F.3d at 791-92. It is undisputed that CP learned about the conduct for which Riley was disciplined when Riley engaged in the protected activity of filing a safety report, protected activity that CP's operating procedures required him to promptly report. Riley testified that he initially resisted filing the report because he did not want to get Bollman fired, a reason unrelated to

-8-

rail safety. He was suspended, according to CP's decision letter, not for filing the report, but for "failure to promptly report the incident," which is required by CP's operating rules, consistent with CP's rail safety obligations.

Of course, as the ALJ and ARB explained, the report and the discipline were an "inextricably intertwined" "chain of events." But no sinister inference may be drawn from this chain of events. "An injury report is a normal trigger for an investigation designed to uncover facts that can prompt corrective action that will reduce the likelihood of a future injury." Koziara v. BNSF Ry., 840 F.3d 873, 878 (7th Cir. 2016). By ruling that this factual connection was sufficient to satisfy the contributing factor causal element of an FRSA claim, the ARB in essence held that an employee can be free of discipline and recover FRSA damages simply by disclosing misconduct of which the employer is otherwise unaware in a report that will be considered protected FRSA activity. It is well settled that "employees cannot immunize themselves against wrongdoing by disclosing it in a protected-activity report." BNSF Ry. v. U.S. Dep't of Labor (Cain), 816 F.3d 628, 639 (10th Cir. 2016). The principle applies in this situation: the protected activity was the untimely filing of a report that CP's operating rules require employees to promptly file, consistent with railroad safety; a suspension imposed for violating that rule does not, without more, evidence discrimination against a good faith rail safety whistleblower.

In its decision, the ARB described Kuduk's intentional retaliation requirement as "conclusory and contrary to the weight of precedent," citing Araujo and ARB precedent. The Secretary of Labor as amicus made this argument in Blackorby. Our panel instead followed Kuduk's interpretation of Staub because "it is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." 849 F.3d at 722 (quotation omitted). As we noted in that opinion, the Secretary may present the ARB's contrary view in a petition for rehearing en banc to our court, or in a petition to the Supreme Court for a writ of certiorari to resolve what the ARB believes to be a conflict in the circuits. Here, the ARB's use of chain-of-events and inextricably-

-9-

intertwined theories we have expressly rejected requires us to grant CP's petition for review and vacate the ARB's order, as in BNSF Railway (Carter), 867 F.3d at 949. "[A]n order may not stand if the agency has misconceived the law." SEC v. Chenery Corp., 318 U.S. 80, 94 (1943).

The remaining issue is the proper disposition of this petition for judicial review. In BNSF Railway (Carter), we remanded because, while the ARB did not adopt the ALJ's flawed chain-of-events theory of causation, it was unable to salvage the ALJ's contributing factor conclusion because it "lacked critical fact findings needed to affirm the ALJ's decision when applying the appropriate legal standard." 867 F.3d at 948. This case is far different. Granted a full evidentiary hearing, Riley presented his prima facie case relying solely on the flawed chain-of-events theory of causation. The ALJ based its contributing factor finding solely on this theory, and the ARB articulated no alternative theory in upholding this finding on appeal. Like the plaintiff in Koziara, Riley relied upon a chain-of-events causation argument. In reversing a jury verdict for plaintiff with instructions to dismiss the suit, the Seventh Circuit explained: "He chose his ground, and it is a legally bad one . . .; having failed to make a backup pretext argument, he does not get a do-over." 840 F.3d at 877.

This is not a case where the employee testified that a supervisor "discouraged him from filing the [safety report] and hinted darkly of unfavorable consequences if he did so." BNSF Ry. (Cain), 816 F.3d at 640. Evidence of such harassment is almost certain to satisfy the contributing factor element of an employee's prima facie case because harassment of railroad employees who report injuries was a major concern of Congress in enacting the whistleblower protection amendment. See Araujo, 708 F.3d at 759. By contrast, when Riley first informally disclosed the altercation, supervisor Christensen immediately urged him to make a formal report, which Riley initially declined to do. The August 21 discipline letter stated that Riley was being suspended for failing to promptly report the altercation with Bollman. Discipline is hardly surprising when a railroad was not promptly notified of a physical

-10-

altercation between the members of a crew operating a locomotive pulling some eighty cars of flammable material near one of the world's busiest airports.

On this record, if Riley had exercised his right to file a "kick-out" lawsuit for *de novo* review in the district court, we would reverse a judgment in Riley's favor with instructions to dismiss the complaint. But here, we are reviewing an administrative agency's adjudication under the Administrative Procedure Act. "[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); see INS v. Ventura, 537 U.S. 12, 16-17 (2002).

When the agency has applied an erroneous legal standard, as in this case, one "rare circumstance" in which there is no reason to remand is if "there is no record evidence to support the [agency's] conclusion" using the correct legal standard. Miranda v. Sessions, 892 F.3d 940, 944 (8th Cir. 2018), citing Hussain v. Gonzales, 477 F.3d 153, 158 (4th Cir. 2007) (no remand needed if the result of a remand "is a foregone conclusion"). This is arguably such a case, given Riley's decision to rely on a flawed causation theory to establish his prima facie case. However, we conclude the more prudent action is to grant CP's petition for review and remand to the ARB with instructions to apply the correct legal standard to the existing administrative record.

STRAS, Circuit Judge, concurs in the judgment.

_____