******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MOMODOU LAMIN JOBE *v.* COMMISSIONER OF CORRECTION
## (SC 20124)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The petitioner, who is not a United States citizen, filed a petition for a writ of habeas corpus, challenging, inter alia, his conviction of illegal possession of less than four ounces of marijuana. At some point after his release from custody in connection with that conviction, the petitioner traveled outside of the United States. When he attempted to return, he was denied reentry to and ordered removed from the United States on the basis of his conviction. At the time he filed his habeas petition, the petitioner was in federal immigration detention pending deportation. The habeas court, sua sponte, rendered judgment dismissing the petition, concluding that it lacked jurisdiction to consider the merits of that petition on the ground that the protections afforded in *Padilla* v. *Kentucky* (559 U.S. 356), which was decided after the petitioner was convicted, did not apply retroactively to the petitioner's case. Thereafter, the petitioner, on the granting of certification, appealed to the Appellate Court. After the petitioner filed his initial brief with that court, the respondent, the Commissioner of Correction, filed an amended preliminary statement of the issues in which he raised, for the first time, as an alternative ground for affirmance, the issue of whether the habeas court had subject matter jurisdiction when the petitioner failed to allege that he was in custody at the time he filed his habeas petition within the meaning of the statute (§ 52-466) governing applications for a writ of habeas corpus. In his initial brief to the Appellate Court, the respondent conceded that the habeas court improperly dismissed the petition on the basis of the nonretroactive application of *Padilla* but claimed that the judgment of dismissal should be affirmed on the alternative ground that the conviction challenged in the habeas petition had expired and the collateral consequences of that conviction were insufficient to establish that the petitioner was in custody when he filed his petition. In his reply brief, the petitioner addressed the custody issue and argued that, although detention in a federal immigration facility as a result of an expired state conviction is insufficient to establish that he was in custody within the meaning of § 52-466 under this court's precedent, the Appellate Court nonetheless should construe custody expansively to include individuals, such as the petitioner, who are in federal immigration detention pending deportation as a consequence of an expired state conviction. The Appellate Court affirmed the judgment of the habeas court on the alternative ground advanced by the respondent, concluding that the habeas court lacked jurisdiction because the petitioner was not in custody when he filed his habeas petition, but declined to review the petitioner's argument that custody should be construed expansively, citing the fact that he had raised that claim for the first time in his reply brief. Thereafter, the petitioner, on the granting of certification, appealed to this court. *Held*:

1. The Appellate Court improperly declined to review the petitioner's argument that it should have construed custody expansively on the ground that it was contained in his reply brief, this court having concluded that the petitioner was not raising a new claim but, rather, merely was responding at his first opportunity to the jurisdictional issue that the respondent raised as an alternative ground for affirmance after the petitioner already had filed his initial appellate brief, and the Appellate Court was obligated to dispose of the issue of subject matter jurisdiction once the respondent raised it; nonetheless, the Appellate Court's refusal to consider the petitioner's argument was harmless because the issue was properly before this court in the petitioner's certified appeal and the Appellate Court was bound by this court's precedent construing the custody requirement, which the petitioner conceded required the Appellate Court to reject his request for an expansive construction

of custody.

2. The petitioner could not prevail on his claim that the habeas court had subject matter jurisdiction over his habeas petition because the custody requirement of § 52-466 was satisfied by his detention in a federal immigration facility pending deportation as a result of his expired state conviction: this court previously has rejected claims that the custody requirement in § 52-466 be interpreted more expansively and concluded that, in order to satisfy the custody requirement, a petitioner must be in custody for the conviction being challenged when the habeas petition is filed, and collateral consequences flowing from an expired conviction, including deportation proceedings, are insufficient to render a petitioner in custody within the meaning of § 52-466, and it was undisputed that the petitioner was not in the custody of the respondent for the state conviction he was challenging when he filed his petition; moreover, an examination of the legislative history of a 2006 amendment to § 52-466 (P.A. 06-152, § 5) clearly indicated, contrary to the petitioner's claim, that that amendment was not a substantive modification to the statutory custody requirement intended to overrule this court's precedent but, rather, was enacted as a technical amendment to court operations through which the legislature intended to centralize in the judicial district of Tolland the filing of habeas petitions brought by and on behalf of inmates or prisoners claiming illegal confinement or a deprivation of liberty, and any challenge to the legality of the petitioner's federal immigration detention could have been pursued, if at all, only by way of a habeas petition in federal court directed against that detention.

Argued October 24, 2019—officially released February 18, 2020

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment dismissing the petition, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *Lavine, Bright* and *Pellegrino, Js.*, which affirmed the judgment of the habeas court; thereafter, the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, assigned counsel, for the appellant (petitioner).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (respondent).

*Temmy Ann Miller* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

ECKER, J. The petitioner, Momodou Lamin Jobe, appeals from the judgment of the Appellate Court affirming the judgment of the habeas court, which dismissed his petition for a writ of habeas corpus for lack of jurisdiction. On appeal, the petitioner contends that the Appellate Court (1) improperly declined to review his response, contained in his reply brief, to the alternative ground for affirmance advanced by the respondent, the Commissioner of Correction, and (2) incorrectly concluded that his federal immigration detention did not satisfy the "custody" requirement of General Statutes § 52-466 (a), as amended in 2006. See Public Acts 2006, No. 06-152, § 5 (P.A. 06-152). We agree with the petitioner's first claim but disagree with his second claim and, therefore, affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. On September 10, 2009, the petitioner, who is not a citizen of the United States, was arrested and charged with illegal possession of less than four ounces of marijuana in violation of General Statutes (Rev. to 2009) § 21a-279 (c) and illegal sale of a record or tape without identification marks in violation of General Statutes § 53-142c. The petitioner pleaded guilty and was sentenced on January 5, 2010, to a total effective sentence of eleven months of imprisonment, execution suspended, and two years of conditional discharge.

At some point after his release from custody, the petitioner traveled outside of the United States. When he returned, he was denied reentry and ordered removed on July 13, 2016, on the basis of the 2010 possession of marijuana conviction. See *Jobe* v. *Whitaker*, 758 Fed. Appx. 144, 146 (2d Cir. 2018), petition for cert. filed, U.S.L.W. (U.S. April 19, 2019) (No. 18-1329). In August, 2016, the petitioner filed a pro se petition for a writ of habeas corpus challenging his 2010 Connecticut conviction. In his petition, the petitioner alleged that his guilty plea was involuntary because his "lawyer told [him] to plead guilty" and that his conviction was unconstitutional because he received ineffective assistance of counsel. Specifically, the petitioner averred that the "Vernon police arrested [him] with less than [thirty] grams of marijuana and when I went to see [an] immigration judge on July 13, 2016, they said that I had [four] ounces of marijuana and I didn't. When I pleaded [guilty] for possession of marijuana, they did not tell me the amount of marijuana I had. And I know for [a] fact that I had less than a[n] ounce. Therefore, I am asking the court to please let me withdraw my guilty plea." The petitioner also filed a request for the appointment of counsel and an application for a waiver of fees, which the habeas court granted.

On September 20, 2016, before counsel had entered an appearance on behalf of either the petitioner or the respondent, the habeas court sua sponte dismissed the petition pursuant to Practice Book § 23-29 (1) on the ground that "[t]he challenged conviction is a pre-*Padilla* plea and sentencing, and the protections afforded in *Padilla* v. *Kentucky*, [559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)] do not apply retroactively. *Chaidez* v. [*United States*, 568 U.S. 342, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013)]." The petitioner filed a petition for certification to appeal, which the habeas court granted.

On appeal to the Appellate Court, the petitioner argued that the habeas court improperly dismissed his petition because "the nonretroactivity of *Padilla* had no bearing on the issue of whether the habeas court had jurisdiction to entertain the . . . petition for a writ of habeas corpus." After the petitioner filed his initial brief, the respondent filed an amended preliminary statement of the issues in which the respondent raised, for the first time, the following alternative ground for affirmance of the habeas court's judgment: "Whether the habeas court had subject matter jurisdiction over the petitioner's petition for a writ of habeas corpus in light of the fact that the petitioner did not plead facts supporting a claim that, at the time he filed his habeas petition, he was in custody [on] the conviction that his habeas petition challenges." In its brief, the respondent agreed with the petitioner that the habeas court improperly dismissed the petition on the basis of the nonretroactive application of *Padilla* v. *Kentucky* but argued that the judgment of dismissal should be affirmed on the alternative ground that the conviction challenged in the petition had expired and the collateral consequences of that conviction were insufficient to satisfy the jurisdictional custody requirement. The petitioner filed a reply brief addressing the custody issue that had just been raised by the respondent for the first time. In his reply brief, the petitioner acknowledged that the habeas court lacked jurisdiction over his petition because, under current law, his federal immigration detention was insufficient to establish that he was "in custody, as that term is defined by . . . § 52-466," but he argued that the "court should adopt an expansive definition of the word 'custody' that permits individuals in the petitioner's situation to pursue a petition for a writ of habeas corpus." At oral argument before the Appellate Court, the petitioner's counsel "conceded that the [habeas] court, based on the face of the petition . . . probably could have chosen to dismiss the petition" for lack of jurisdiction and that the Appellate Court lacked the authority to overrule the binding precedent of this court holding that the petitioner's federal immigration detention was insufficient to satisfy the custody requirement of § 52-466, but he nonetheless asked the Appellate Court to "include a footnote or a mention of the fact that this issue was raised and that it

could not be addressed" due to that binding precedent.

The Appellate Court affirmed the judgment of the habeas court on the alternative ground advanced by the respondent, namely, that "[t]he petitioner, as his counsel conceded, was not in custody pursuant to § 52-466 (a) (1) at the time he filed his petition for a writ of habeas corpus" and that "[t]he habeas court, therefore, lacked jurisdiction to adjudicate the merits of the petition . . . ."[1] *Jobe* v. *Commissioner of Correction*, 181 Conn. App. 236, 239, 186 A.3d 1219 (2018). Although the petitioner had asked the Appellate Court "to adopt an expansive definition of the word *custody*" that includes individuals in federal immigration detention as a result of an expired state conviction, the Appellate Court declined to review the petitioner's argument because it was "raised for the first time in a reply brief." (Emphasis in original.) Id., 239 n.5. We subsequently granted the petitioner's petition for certification to appeal, limited to determining (1) whether "the Appellate Court properly decline[d] to review the petitioner's claim that the definition of 'custody' in . . . § 52-466 should include individuals in the petitioner's circumstances, when the first opportunity to raise that claim was in the petitioner's reply brief because the petitioner had no notice that the respondent would raise an unpreserved alternative ground to affirm the habeas court's judgment," and (2) whether "§ 52-466 include[s] habeas petitioners whose sentences have been fully served, who are in the custody of federal immigration authorities, and who could not have been aware of the need to challenge the constitutionality of their convictions until after serving their sentences . . . ." *Jobe* v. *Commissioner of Correction*, 329 Conn. 906, 185 A.3d 594 (2018).

I

We first address whether the Appellate Court properly declined to review the petitioner's argument, made for the first time in his reply brief, that the custody requirement of § 52-466 should be construed expansively to include individuals, like the petitioner, who are in federal immigration detention pending deportation as a consequence of an expired state conviction. "It is well settled that [o]ur case law and rules of practice generally limit [an appellate] court's review to issues that are distinctly raised at trial," and "[o]nly in [the] most exceptional circumstances can and will [an appellate] court consider a claim, constitutional or otherwise, that has not been raised and decided in the trial court." (Internal quotation marks omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014). One of those "exceptional circumstances" is a claim that the trial court lacked subject matter jurisdiction, "which the reviewing court not only can but is obligated to exercise its power to review . . . ." Id., 149. "The sub-

ject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006). "[T]he question of subject matter jurisdiction is a question of law . . . and, once raised, either by a party or by the court itself, the question must be answered before the court may decide the case. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Richardson*, 291 Conn. 426, 429, 969 A.2d 166 (2009).

"[T]he custody requirement in § 52-466 is jurisdictional"; *Lebron* v. *Commissioner of Correction*, 274 Conn. 507, 526, 876 A.2d 1178 (2005), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 91 A.3d 862 (2014); and, therefore, once the issue of the petitioner's custody was raised by the respondent in the present case, the Appellate Court was "obligated to determine whether the habeas court lacked subject matter jurisdiction." *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 535. Although the jurisdictional issue properly was before the Appellate Court, the petitioner was not afforded an opportunity to address this issue until he filed his reply brief because it was raised for the first time in the respondent's amended preliminary statement of the issues and initial appellee's brief, both of which were filed after the petitioner's initial brief. Thus, at the time the petitioner's initial brief was filed, he did not have notice of the alleged jurisdictional defect or an opportunity to articulate an argument as to how his federal immigration detention satisfied the jurisdictional custody requirement. Because the petitioner was not raising a new claim[2] but merely responding at the first opportunity to the respondent's newly raised alternative ground for affirmance, we conclude that the Appellate Court improperly declined to address the petitioner's argument on the ground that it was contained in his reply brief. See *Curry* v. *Burns*, 225 Conn. 782, 789 n.2, 626 A.2d 719 (1993) (addressing argument raised for first time in reply brief because it was first opportunity to join argument raised by amicus curiae); *37 Huntington Street, H, LLC* v. *Hartford*, 62 Conn. App. 586, 597 n.17, 772 A.2d 633 (addressing argument "first presented in a reply brief," even though such arguments are "disfavor[ed]," because "the plaintiff had no earlier opportunity to respond to issues raised in briefs filed by amici curiae"), cert. denied, 256 Conn. 914, 772 A.2d 1127 (2001); see also *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997) ("the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief" (internal quotation marks omitted)).

Nonetheless, we perceive no harm in the Appellate

Court's failure to address the merits of the petitioner's argument because, as the petitioner conceded before the Appellate Court, that court was bound by our precedent in *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 530, holding that "a petitioner whose conviction has expired fully prior to the filing of a habeas petition is not in 'custody' on that conviction within the meaning of § 52-466, despite the alleged existence of collateral consequences flowing from that conviction." Thus, the Appellate Court was required by binding precedent to reject the petitioner's request for an expansive definition of the term custody within the meaning of § 52-466. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that this court has the final say on matters of Connecticut law and that the Appellate Court and Superior Court are bound by our precedent"); *State* v. *Montanez*, 185 Conn. App. 589, 605 n.5, 197 A.3d 959 (2018) ("[i]t is axiomatic that, [a]s an intermediate appellate court, [the Appellate Court is] bound by Supreme Court precedent and [is] unable to modify it" (internal quotation marks omitted)), cert. denied, 332 Conn. 907, 209 A.3d 643 (2019). Indeed, the petitioner explicitly acknowledged the futility of his argument in the Appellate Court, which explains why he asked that court simply to "include a footnote or a mention of the fact that this issue was raised and that it could not be addressed." That is exactly what the Appellate Court did, albeit for the wrong reason.

The record reflects that the petitioner raised his jurisdictional custody argument at the first opportunity before the Appellate Court, and, therefore, the issue properly is before this court in this certified appeal. See *State* v. *Fauci*, 282 Conn. 23, 26 n.1, 917 A.2d 978 (2007) (recognizing that, in certified appeals, appellants must raise their claims "before the Appellate Court or in the petition for certification to appeal"); see also *Ulbrich* v. *Groth*, 310 Conn. 375, 428, 78 A.3d 76 (2013) (futility of asking lower court "to overrule a decision of this court" does not "automatically [excuse] the failure to preserve the claim").

## II

The petitioner contends that his federal immigration detention is sufficient to satisfy the custody requirement of § 52-466 because the sole reason for his detention was his expired state conviction, and he had no reason to know that his state conviction was unconstitutional until after it had expired.[3] The petitioner acknowledges that, under *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 507, and its progeny, a habeas petitioner whose sentence completely has expired is not in custody within the meaning of § 52-466, despite the existence of collateral consequences like deportation. The petitioner argues, however, that a 2006 amendment to § 52-466 plainly overruled this precedent and

made it easier to satisfy the statutory custody requirement by permitting any inmate or prisoner confined in any "correctional facility as a result of a conviction of a crime" to file a habeas petition. See P.A. 06-152, § 5, codified at General Statutes § 52-466 (a). The respondent counters that the purpose of the 2006 amendment was not to alter the definition of custody within the meaning of § 52-466 but, rather, to "centralize the filing of habeas petitions by incarcerated petitioners" in the judicial district of Tolland. We agree with the respondent.

As we previously explained, "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 532. Additionally, "[i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Boisvert* v. *Gavis*, 332 Conn. 115, 141–42, 210 A.3d 1 (2019).

We begin our analysis with the language of § 52-466 (a), which provides: "(1) An application for a writ of habeas corpus, other than an application pursuant to subdivision (2) of this subsection, shall be made to the superior court, or to a judge thereof, for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of such person's liberty.

"(2) An application for a writ of habeas corpus claiming illegal confinement or deprivation of liberty, made by or on behalf of an inmate or prisoner confined in a correctional facility as a result of a conviction of a crime, shall be made to the superior court, or to a judge thereof, for the judicial district of Tolland."

The present appeal requires us to construe subdivision (2) of § 52-466 (a), which was enacted in 2006 as part of P.A. 06-152, entitled "An Act Concerning Court

Operations." P.A. 06-152, § 5. Public Act 06-152 amended various statutes that impact the function and operation of the courts of this state, such as General Statutes § 51-36, which governs the retention, reproduction, disposal, and transfer of court records; see P.A. 06-152, § 3; and General Statutes § 46a-70a, which requires the Judicial Branch to develop and implement an equal employment opportunities plan pursuant to federal law. See P.A. 06-152, § 11. As relevant to this appeal, § 5 of P.A. 06-152 changed the place of filing for habeas petitions "made by or on behalf of an inmate or prisoner confined in a correctional facility as a result of a conviction of a crime" from the judicial district of the inmate's confinement to the judicial district of Tolland.

The issue presented by this appeal is whether this statutory amendment was intended to overrule this court's precedent construing § 52-466 to require, as a matter of subject matter jurisdiction, "a petitioner [to] be in custody on the conviction under attack at the time the habeas petition is filed . . . ." *McCarthy* v. *Commissioner of Correction*, 274 Conn. 557, 562, 877 A.2d 758 (2005). Because the plain language of § 52-466 is ambiguous with respect to whether the statutory amendment was intended to expand the definition of custody to include individuals who are civilly detained in a federal immigration detention facility pending deportation,[4] as the petitioner contends, or whether it was intended to centralize the filing of inmate or prisoner petitions in the judicial district of Tolland, as the respondent contends, we turn to extratextual sources to aid in our interpretation of the statute.

We begin our analysis with the history and purpose of the writ of habeas corpus. "[F]rom the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention." (Internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 523. The history of the writ in the United States, both in federal court and in our own state courts, reveals that "[h]abeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal quotation marks omitted.) Id., 525; see also *Summerville* v. *Warden*, 229 Conn. 397, 419, 641 A.2d 1356 (1994) ("[t]he principal purpose of the writ of habeas corpus is to serve as a bulwark against convictions that violate fundamental fairness" (internal quotation marks omitted)).

"Although the writ of habeas corpus has a long com-

mon-law history, the legislature has enacted numerous statutes shaping its use, such as . . . § 52-466, which governs the litigation of the writ as a civil matter." (Footnote omitted.) *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 565–66, 153 A.3d 1233 (2017). In *Lebron*, we considered whether, under the version of § 52-466 in effect prior to the passage of P.A. 06-152, § 5, the statutory requirement that applications for writs of habeas corpus be filed in "the [S]uperior [C]ourt or [with] a judge thereof for the judicial district in which the person whose *custody* is in question is claimed to be illegally confined or deprived of his liberty" was a prerequisite to the court's exercise of subject matter jurisdiction or, instead, a venue provision designating the place of filing. (Emphasis in original; internal quotation marks omitted.) *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 523. After reviewing the history and purpose of the common-law writ of habeas corpus, we determined that "the custody requirement in [General Statutes (Rev. to 2001)] § 52-466 is jurisdictional," and, therefore, "the habeas court lacks the power to act on a habeas petition absent the petitioner's allegedly unlawful custody." Id., 526.

Having determined that the custody requirement in General Statutes (Rev. to 2001) § 52-466 was jurisdictional, we proceeded to consider whether the collateral consequences of an expired conviction are sufficient to render a habeas petitioner in custody within the meaning of the statute. The petitioner, Luis A. Lebron, filed a habeas petition challenging an expired conviction, which he claimed was being used to enhance his current sentence and his inmate security classification. Id., 510. We concluded that Lebron was not in custody on his expired conviction, "despite the alleged existence of collateral consequences flowing from that conviction"; id., 530; because the custody requirement "has never been extended to the situation where a habeas petitioner *suffers no present restraint from a conviction*." (Emphasis in original; internal quotation marks omitted.) Id., 531. Lebron's alleged "loss of liberty [stemmed] *solely from his current conviction*" and, therefore, was insufficient to "[render] him in custody" within the meaning of General Statutes (Rev. to 2001) § 52-466. (Emphasis added.) Id. To construe the statute otherwise "would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time through a state petition for habeas corpus and would read the in custody requirement out of the statute." (Internal quotation marks omitted.) Id.; see also *McCarthy* v. *Commissioner of Correction*, supra, 274 Conn. 563 (holding that petitioner was not in custody on expired state conviction, even though expired conviction had been used to enhance petitioner's current federal sentence, because "his loss of liberty stems solely from his current federal conviction").

One year later, in *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 517–19, we considered whether the petitioner, Rafiu Abimbola Ajadi, who was paroled directly into the physical custody of federal immigration officials and detained by those officials pending deportation as a collateral consequence of his expired state convictions, was in custody on those convictions under General Statutes (Rev. to 2001) § 52-466. Although Ajadi's deportation proceedings were a "severe" and "virtually automatic" collateral consequence of his expired state convictions, we reasoned that, pursuant to *Lebron*, "the collateral consequences of [Ajadi's] expired convictions . . . [were] insufficient to render [Ajadi] in custody on those convictions and, therefore, to invoke the jurisdiction of the habeas court." Id., 539 n.28, 541. Accordingly, we held that the "the habeas court lacked subject matter jurisdiction over [Ajadi's] habeas petition because [he] was not in custody on his expired . . . convictions when his petition was filed." Id., 548.

In *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 695, 6 A.3d 52 (2010), we rejected the claim of the petitioner, Kenneth Richardson, that "the custody requirement embodied in § 52-466 is satisfied by confinement alone" such that "custody or confinement under a specific sentence is not required."[5] At the time he filed his petition for a writ of habeas corpus, Richardson was serving a mandatory term of life imprisonment for a federal drug offense pursuant to a sentence enhancement based on his expired state conviction. Id., 692–93. We held that Richardson was not in custody on his expired state conviction because (1) "in order to satisfy the custody requirement of § 52-466, the 'petitioner [must] be in *custody on the conviction under attack* at the time the habeas petition is filed,' " and (2) "collateral consequences flowing from an expired conviction do not render a petitioner in 'custody' under § 52-466; rather such a claim of confinement or custody and any accompanying 'loss of liberty [stem] solely from [a petitioner's] current conviction.' " (Emphasis in original.) Id., 698. We therefore "decline[d] [Richardson's] invitation to stretch the language of § 52-466 so far that custody qua custody satisfie[s] the jurisdictional requirement [regardless of any] reference to the [sentence] then being served." (Internal quotation marks omitted.) Id., 699.

The foregoing case law reflects both that this court consistently has construed the custody requirement in § 52-466 to require "a petitioner [to] be in custody on the conviction under attack at the time the habeas petition is filed,"[6] and "that the collateral consequences of an expired conviction," such as deportation, "are insufficient to render a petitioner in 'custody' within the meaning of the statute." *McCarthy* v. *Commissioner of Correction*, supra, 274 Conn. 562; see also *Oliphant*

v. *Commissioner of Correction*, 274 Conn. 563, 581, 877 A.2d 761 (2005) (habeas court lacked jurisdiction over habeas petition because petitioner was not in custody on conviction under attack at time petition was filed); *Guerra* v. *State*, 150 Conn. App. 68, 78, 89 A.3d 1028 (same), cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014); *Fernandez* v. *Commissioner of Correction*, 139 Conn. App. 173, 178–82, 55 A.3d 588 (2012) (same), cert. granted, 307 Conn. 947, 60 A.3d 960 (2013) (appeal withdrawn May 28, 2013); *Parker* v. *Commissioner of Correction*, 117 Conn. App. 727, 730–32, 980 A.2d 930 (same), cert. denied, 294 Conn. 917, 983 A.2d 851 (2009); *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 194, 932 A.2d 467 (2007) (same), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008).

The petitioner contends that the 2006 amendment to § 52-466 (a) was intended to overrule this case law and expand the jurisdiction of the habeas court to include petitions for writs of habeas corpus filed by individuals, like the petitioner, "whose sentences have been fully served, [who] are in the custody of federal immigration authorities, and [who] could not have been aware of the need to challenge the constitutionality of their convictions until after serving their sentences." The legislative history of P.A. 06-152 belies the petitioner's contention. The express intent of the 2006 amendment was to implement a "fairly technical series of amendments to core [judicial] operations." 49 S. Proc., Pt. 8, 2006 Sess., p. 2438, remarks of Senator Andrew J. McDonald. Deborah Fuller, a representative of the External Affairs Division of the Judicial Branch, confirmed in her written testimony submitted to the Judiciary Committee that the purpose of the provision at issue was technical in nature, explaining that it "streamlines the consolidation of those habeas cases where the claim is illegal confinement or deprivation of liberty, resulting from a criminal conviction, by requiring that these cases be filed in the Tolland [j]udicial [d]istrict, where they are currently being heard." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2006 Sess., p. 359.

The legislative record reflects that a prior version of the 2006 amendment was submitted to the General Assembly in 2005, prior to the release of this court's decisions construing the custody requirement in *Lebron*, *McCarthy*, *Ajadi*, and *Richardson*. See Raised Bill No. 1263, January, 2005 Sess., § 7. The purpose of the bill was to "allow the Judicial Branch to operate more efficiently and effectively" by "requiring that all habeas petitions be filed in the [j]udicial [d]istrict of Tolland . . . ." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 12, 2005 Sess., p. 3569, written testimony of Fuller. Concern was expressed, however, that the language of the bill would have the unintended consequence of "delet[ing] the right to other types of habeases."[7] Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 2006 Sess., p. 359, written testimony of

Fuller; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 12, 2005 Sess., pp. 3566–67, written testimony of Deborah Del Prete Sullivan, Legal Counsel, Office of the Chief Public Defender (objecting to breadth of certain language in bill). The 2005 amendment to § 52-466 did not make it out of the Judiciary Committee but was reintroduced a year later in the 2006 amendment with language intended to clarify that the consolidation of prisoner petitions in the judicial district of Tolland was not intended to eliminate the right of habeas corpus in nonprisoner cases.

On the basis of the foregoing, we conclude that the 2006 amendment did not expand the definition of custody and overrule this court's precedent holding that "a petitioner whose conviction has expired fully prior to the filing of a habeas petition is not in 'custody' on that conviction within the meaning of § 52-466, despite the alleged existence of collateral consequences flowing from that conviction." *Lebron* v. *Commissioner of Correction*, supra, 274 Conn. 530. Instead, the legislative history of the 2006 amendment shows that the purpose of subdivision (2) of § 52-466 (a) was to consolidate and centralize the filing of prisoner and inmate habeas petitions in the judicial district of Tolland in order to better allow for the efficient and effective disposition of such petitions. Because the 2006 amendment did not change the scope of the habeas court's jurisdiction or the statutory custody requirement, and it is undisputed that the state conviction challenged in the petitioner's habeas petition fully had expired when the petition was filed, we conclude that the habeas court properly dismissed the petition for lack of jurisdiction pursuant to Practice Book § 23-29 (1).[8]

At the time he filed his habeas petition, the petitioner was in federal immigration detention as a result of federal immigration law; see footnote 3 of this opinion; and, therefore, he "[could] pursue his claim, if at all, only by way of a [federal] petition for a writ of habeas corpus attacking his current federal" detention. *McCarthy* v. *Commissioner of Correction*, supra, 274 Conn. 563; see also *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 547 n.32 (noting that a "petitioner cannot challenge . . . federal custody in the courts of this state under § 52-466"). The petitioner points out, however, that federal law affords him no relief because the United States Circuit Courts of Appeals uniformly "have determined that one held in immigration detention is not in custody for the purpose of challenging a state conviction under [28 U.S.C.] § 2254," reasoning, as we did in *Ajadi*, that "[r]emoval proceedings are at best a collateral consequence of conviction," and they "are not themselves sufficient to render an individual in custody for the purpose[s] of a habeas attack upon it." (Internal quotation marks omitted.) *Ogunwomoju* v. *United States*, 512 F.3d 69, 75 (2d Cir. 2008). In light of the "severe" and "virtually automatic" collateral con-

sequences of a criminal conviction under federal immigration law; *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 539 n.28, 541; the petitioner points out that some states have expanded the definition of custody in their habeas statutes, either by judicial construction or legislative amendment, to include federal immigration detention. See, e.g., Cal. Penal Code § 1473.7 (a) and (b) (2) (A) (Deering Supp. 2019) (allowing "[a] person who is no longer in criminal custody [to] file a motion to vacate a conviction or sentence" if, among other things, "[t]he moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization"); Me. Rev. Stat. Ann. tit. 15, § 2124 (3) (E) (2016) (providing that postconviction proceeding may be brought by individual suffering "[p]resent restraint or impediment resulting indirectly from the challenged criminal judgment of [Maine]," including from "[a] criminal judgment in [Maine] pursuant to a plea of guilty or nolo contendere accepted by a trial court on or after March 31, 2010 by a represented defendant who is not a United States citizen and who under federal immigration law, as a consequence of the particular plea, is subject to a pending deportation proceeding"); *Parris* v. *State*, 232 Ga. 687, 690, 208 S.E.2d 493 (1974) (holding that collateral consequences of expired conviction are sufficient to satisfy custody requirement of Georgia's habeas statute); *Ex parte De Los Reyes*, 350 S.W.3d 723, 728 (Tex. App. 2011) (holding that petitioner in federal immigration detention was in custody on expired state conviction because petitioner did not seek release from federal custody but, rather, "reversal of his state court conviction and a new trial"), rev'd on other grounds, 392 S.W.3d 675 (Tex. Crim. App. 2013); *Le* v. *State*, 300 S.W.3d 324, 326–27 (Tex. App. 2009) (holding that collateral consequences flowing from expired state conviction were sufficient to satisfy custody requirement of Texas' habeas statute); *In re Stewart*, 140 Vt. 351, 359–60, 438 A.2d 1106 (1981) (rejecting "a narrow construction of 'in custody' " and holding that "a person is 'in custody' " under Vermont's habeas statute "if he suffers a significant restraint on personal liberty as a direct result of the challenged Vermont conviction"). The petitioner and the amicus curiae, the Connecticut Criminal Defense Lawyers Association, urge this court to follow the lead of these states and adopt an expansive definition of the term custody for purposes of § 52-466.

We acknowledge that individuals in federal immigration detention facing deportation as a consequence of an expired Connecticut conviction are unable under existing law to challenge the constitutionality of that conviction in either a federal or state forum, despite the existence of grave and life altering collateral conse-

quences. The custody requirement in § 52-466 was not changed by the 2006 amendment, however, and our case law construing the statute and the scope of the habeas court's jurisdiction remains unaffected by the amendment.[9] At this point in time, the question of whether to expand the custody requirement in § 52-466 to include individuals in federal immigration detention pending deportation as a result of an allegedly unconstitutional expired state conviction is one of public policy, and, "[i]n areas where the legislature has spoken. . . the primary responsibility for formulating public policy must remain with the legislature." *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987); see also *Burnham* v. *Administrator*, 184 Conn. 317, 325, 439 A.2d 1008 (1981) (emphasizing "[t]he wisdom of deferring questions of public policy to the legislature" in order to avoid "the problems that judicial intervention would create"). This means that it is up to the legislature, not the courts, to determine whether the scope of the custody requirement in § 52-466 should be expanded in light of the draconian consequences that a state conviction triggers under federal immigration law.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] The Appellate Court noted that, "[d]uring oral argument, counsel for the petitioner acknowledged that the only way the petitioner could have been in custody at the time that he filed his petition was if a warrant had been issued for violation of his conditional discharge," and, in the absence of "such a warrant, the habeas court would not have subject matter jurisdiction over his petition." *Jobe* v. *Commissioner of Correction*, 181 Conn. App. 236, 238, 186 A.3d 1219 (2018). "Following oral argument, counsel for the parties signed and submitted a letter to the court stating that they had searched relevant bases of information and found no evidence that a warrant had been issued for the petitioner for violation of his conditional discharge." Id., 239. Therefore, it was undisputed that the petitioner was not in custody under § 52-466 in the absence of the adoption of a new and expanded definition of "the word *custody*." (Emphasis in original.) Id., 239 n.5.

[2] A claim is an entirely new legal issue, whereas, "[g]enerally speaking, an argument is a point or line of reasoning made in support of" or in opposition to "a particular claim." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 319 Conn. 623, 635 n.7, 126 A.3d 558 (2015), quoting *State* v. *Fernando A.*, 294 Conn. 1, 116 n.32, 981 A.2d 427 (2009) (*Palmer, J.*, dissenting in part). Our rules of preservation apply to claims, but they do not apply to legal arguments, and, therefore, "[w]e may . . . review legal arguments that differ from those raised" below "if they are subsumed within or intertwined with arguments related to the legal claim" before the court. (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, supra, 635 n.7. In the present case, the *claim* raised by the respondent was that the petitioner was not in custody within the meaning of § 52-466; in response to this claim, the petitioner proffered an *argument* that he was in custody under an expansive definition of that term. For this reason, we find no merit in the respondent's contention that the petitioner raised "a wholly new claim" in his reply brief.

[3] After filing his petition, the petitioner was deported to his native country of Gambia and, therefore, no longer is in the custody of federal immigration authorities. At oral argument before this court, we questioned whether the appeal was moot in light of the petitioner's subsequent deportation. See *State* v. *Aquino*, 279 Conn. 293, 298, 901 A.2d 1194 (2006) (dismissing appeal as moot because "[t]here is no evidence in the record as to the reason for [the petitioner's] deportation," and, "[i]f it was not the result of his guilty plea alone, then this court can grant no practical relief"). The petitioner's counsel argued that the appeal is not moot because this court can afford the petitioner practical relief in that the reversal of his expired state conviction would enable the petitioner to return to the United States or, at the

very least, apply for readmission. The record reflects that the petitioner was denied reentry to the United States and deported as a consequence of his conviction of "a single drug offense involving a small amount of marijuana" pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 8 U.S.C. § 1101 et seq. *Jobe* v. *Whitaker*, supra, 758 Fed. Appx. 146. Because "the record establishes the reason for the [petitioner's] deportation," and "there is a reasonable possibility of prejudicial collateral consequences" from the expired state conviction, namely, the denial of readmission to the United States under the IIRIRA, we conclude that the appeal is not moot. *State* v. *Jerzy G.*, 326 Conn. 206, 223, 162 A.3d 692 (2017); see also *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 218, 177 A.3d 1144 (2018) (holding that appeal from denial of petition for writ of habeas corpus was not moot, despite petitioner's subsequent deportation, because challenged conviction gave "rise to a reasonable possibility of prejudicial collateral consequences—namely, his deportation and a barrier to reentry").

[4] See, e.g., *Zadvydas* v. *Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001) (recognizing that federal immigration detention pending deportation generally is "civil, not criminal" and, therefore, "nonpunitive in purpose and effect").

[5] Although the habeas petition at issue in *Richardson* was filed after the effective date of the 2006 amendment to § 52-466, Richardson did not rely on the amendment in support of his jurisdictional argument, and we therefore did not consider what impact, if any, the 2006 amendment has on the jurisdiction of the habeas court.

[6] We have recognized a "limited exception" to the custody requirement when a petitioner is challenging an expired sentence imposed consecutive to the petitioner's current sentence because consecutive sentences are viewed "as a 'continuous stream' of custody for purposes of the habeas court's subject matter jurisdiction." *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 573, 877 A.2d 761 (2005), quoting *Garlotte* v. *Fordice*, 515 U.S. 39, 41, 115 S. Ct. 1948, 132 L. Ed. 2d 36 (1995). The petitioner in the present case does not allege and cannot establish that he was subject to a continuous stream of custody. See *Ajadi* v. *Commissioner of Correction*, supra, 280 Conn. 543 (rejecting claim that "a criminal conviction followed by the commencement of deportation proceedings, like the imposition of consecutive sentences, should be treated as a continuous stream of custody").

[7] Section 7 of Raised Bill No. 1263 proposed repealing subsection (a) of General Statutes (Rev. to 2005) § 52-466 and substituting the following in its place: "(a) An application for a writ of habeas corpus *made by or on behalf of a person in custody who claims to be illegally confined or deprived of his liberty* shall be made to the superior court or to a judge thereof for the judicial district [in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty, provided any application made by or on behalf of a person confined in the Connecticut Correctional Institution, Enfield-Medium or the Carl Robinson Correctional Institution, Enfield, shall be made to the superior court or a judge thereof for the judicial district] of Tolland." Language that was proposed to be amended is indicated by italics, and language that was proposed to be deleted is indicated by brackets.

[8] We recognize that, in *Gilchrist* v. *Commissioner of Correction*, 334 Conn. 548,     A.3d     (2020), we recently held that, prior to the issuance of the writ and service of process, a lack of jurisdiction apparent on the face of a habeas petition should result in an order declining to issue the writ under Practice Book § 23-24 (a) (1) rather than an order of dismissal under Practice Book § 23-29 (1). See id., 562–63. Although it appears that the petition at issue in the present case was dismissed by the habeas court under Practice Book § 23-29 (1) prior to the issuance of the writ or service of process, contrary to *Gilchrist*, the petitioner does not challenge the dismissal of his petition on this procedural ground, and, therefore, we do not address the issue. See, e.g., *State* v. *Connor*, 321 Conn. 350, 362, 138 A.3d 265 (2016) ("[o]ur appellate courts generally do not consider issues that were not raised by the parties").

[9] The petitioner's claim on appeal is predicated entirely on the 2006 amendment to § 52-466; the petitioner does not otherwise contend that our case law construing the statutory custody requirement wrongly was decided and should be overruled. The amicus curiae, by contrast, suggests that our holding in *Ajadi* no longer is good law due to, among other reasons, *Padilla* v. *Kentucky*, supra, 559 U.S. 366, in which the United States Supreme Court

determined that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence." We decline to address this argument because it was not raised by the petitioner. See, e.g., *Rockstone Capital, LLC* v. *Sanzo*, 332 Conn. 306, 324 n.7, 210 A.3d 554 (2019) (declining to "consider the other arguments advanced by the amicus because they were not raised by the parties").

---