349 Conn. 223 JUNE, 2024 223

Dept. of Public Health *v.* Estrada

DEPARTMENT OF PUBLIC HEALTH *v.*
JUANITA ESTRADA ET AL.
(SC 20717)

Robinson, C. J., and McDonald, D'Auria, Mullins and Ecker, Js.

*Syllabus*

The named defendant, E, an employee of the plaintiff, the Department of
Public Health, filed a complaint with the defendant Commission on
Human Rights and Opportunities, alleging that the plaintiff retaliated
against her for a whistleblower disclosure that she had made and that
allegedly was protected by statute ((Rev. to 2017) § 4-61dd). E's job
duties included reviewing the qualifications of individuals who are
appointed to be a municipal director or acting director of health. The
department had received an appointment letter from the then director
of health of Hartford, requesting approval of W as Hartford's acting
director of health. Both the letter and W's resume represented that W
held a master's degree in public health, which is one of two alternative
statutory ((Rev. to 2015) § 19a-200 (a)) prerequisites for the appointment
to the position of municipal director of health. E reviewed the request,
including W's resume, and she drafted a letter approving the appointment
without first verifying that W actually possessed a master's degree in
public health. The Commissioner of Public Health ultimately signed the
approval letter. E subsequently learned that W did not possess a master's
degree in public health, and, after she notified her supervisor, B, W was
removed from the acting director position. Shortly thereafter, E again
failed to verify the credentials of an individual who had been appointed
to serve as another municipality's acting director of health. When B
learned of the repeated error, E received a letter of reprimand. E subse-
quently received another letter of reprimand and multiple, unsatisfactory
performance appraisals, and was ultimately demoted. Pursuant to a
collective bargaining agreement, E filed grievances challenging the fore-
going, adverse personnel actions but did not raise a whistleblower retali-
ation claim in connection with those grievances. All of the grievances
were denied. E then filed the present whistleblower retaliation claim
with the commission pursuant to § 4-61dd (e) (2) (A). E's claim was based
on the same personnel actions that formed the basis of her grievances.
In E's amended complaint filed with the commission, E alleged, inter
alia, that her statement to B that W did not possess a master's degree
in public health constituted a report of a violation of § 19a-200 (a). E
further alleged that this information constituted a protected whis-
tleblower disclosure under § 4-61dd, in response to which the depart-
ment retaliated against her. A hearing was held before a human rights
referee, who concluded that E had made a protected whistleblower
disclosure under § 4-61dd and that the department had retaliated against

Dept. of Public Health *v.* Estrada

her in response to that disclosure. The department appealed the referee's decision to the trial court, which sustained the department's appeal and rendered judgment thereon, concluding that the commission lacked subject matter jurisdiction to adjudicate E's whistleblower complaint, that E had not made a protected whistleblower disclosure under § 4-61dd, and that E had failed to establish a causal connection between any alleged whistleblower disclosure and the alleged retaliation. Thereafter, the commission appealed to the Appellate Court, which concluded that the commission had jurisdiction but nevertheless affirmed the trial court's judgment on the merits in favor of the department. On the granting of certification, the commission appealed to this court. *Held*:

1. The commission had subject matter jurisdiction to adjudicate E's whistleblower retaliation claim:

   It was undisputed that § 4-61dd contains a statutory waiver of sovereign immunity, and the department could not prevail on its claim that, because E had filed grievances challenging the same adverse personnel actions that formed the basis of E's retaliation claim before the commission, her claim before the commission fell outside of the waiver of sovereign immunity in § 4-61dd.

   Specifically, the statutory scheme contemplates that a state employee may pursue both a grievance alleging a violation of an applicable collective bargaining agreement that does not involve a whistleblower claim, as well as a whistleblower retaliation claim alleging retaliatory animus stemming from the same factual circumstances that formed the basis for an alternative remedy, and the filing of a grievance under § 4-61dd (e) (3) on a ground other than whistleblower retaliation was not a basis for precluding the filing of a whistleblower retaliation complaint with the commission pursuant to § 4-61dd (e) (2) (A).

   In the present case, E's grievances, which she asserted under § 4-61dd (e) (3), did not raise a claim of whistleblower retaliation, and E was, therefore, not barred from filing a complaint with the commission alleging whistleblower retaliation pursuant to § 4-61dd (e) (2) (A).

   Accordingly, the commission had the authority to adjudicate the type of controversy before it, namely, a whistleblower retaliation claim.

   Moreover, this court concluded that the proper vehicle for addressing allegedly duplicative claims under § 4-61dd is a special defense raising an election of remedies claim rather than a challenge based on subject matter jurisdiction.

2. The department could not prevail on its claim that the commission had waived or abandoned certain issues by failing to raise or brief them before this court or the Appellate Court:

349 Conn. 223        JUNE, 2024        225

Dept. of Public Health *v.* Estrada

An appellant can raise on appeal to this court only those issues set forth in the petition for certification, except when the issues are further limited by this court's order granting certification.

In the present case, the commission's petition for certification focused on the broad claim that the Appellate Court incorrectly had determined that E's disclosure was not a protected disclosure under § 4-61dd, but the commission limited its briefing on the merits to the narrower issue on which this court granted certification, and the interests of justice weighed heavily in favor of not penalizing the commission for this court's certification of a more narrowly tailored issue than the issue on which the commission had sought certification.

Moreover, there was no merit to the department's claim that the commission had abandoned the one issue that it did address before this court by failing to raise or brief that issue in the Appellate Court, which did not decide that issue, as the department conflated the distinction between arguments and claims.

Specifically, the argument concerning whether E was required to prove an actual violation of state law or a reasonable, good faith belief of such a violation was "subsumed within or intertwined with" the broader legal claim of whether her disclosure was a whistleblower disclosure within the meaning of § 4-61dd, and the department never argued that the broader claim was not abandoned in its response to the commission's petition for certification.

3. This court declined to address the department's claim that E's disclosure concerned misconduct in municipal government to which § 4-61dd does not apply because, even if § 4-61dd does not apply to misconduct in municipal government, the misconduct that E reported was that the department, a state agency, made an error in approving W for the position of Hartford's acting director of health:

Although W may have misrepresented his credentials on his resume, which would have amounted to misconduct at the municipal level, E reported wrongdoing by the state, namely, the department's deficient review process of an appointee's credentials, the department's erroneous approval of W, and E's own failure, as a state employee, to verify that W possessed the degree he claimed to have had.

4. The broad language, legislative history and remedial purpose of § 4-61dd compelled the conclusion that a government employee, such as E, is entitled to whistleblower protection under that statute for reporting his or her own error:

The references in § 4-61dd to "[a]ny person" who discloses covered information involving "any matter involving . . . violation of state laws . . . mismanagement . . . or danger to the public safety" were con-

Dept. of Public Health *v.* Estrada

strued broadly to effectuate the statute's remedial purpose of rooting out government misconduct.

Moreover, it was unlikely that the legislature would have wanted employees disciplined merely for the act of bringing their own wrongdoings to light, as that would discourage disclosure and undermine the statutory goals.

Furthermore, the legislative history indicated that the legislature has consistently extended the reach of § 4-61dd since its enactment and has never imposed limitations on the statute's coverage that would suggest an intention to exclude from the purview of that statute employees who report their own misconduct.

Accordingly, E and her disclosure came within the ambit of the broad statutory language, and her disclosure was protected under § 4-61dd despite her involvement in the actions giving rise to it, as her disclosure exposed the fact that the department's error may have led to a violation of § 19a-200 and brought to light the purportedly deficient review process that led to the error in approving W's appointment.

5. This court concluded that E had failed to prove that the department's adverse personnel actions were caused by E's reporting of her errors rather than the errors themselves:

This court declined to apply the rebuttable presumption set forth in § 4-61dd (e) (4) that an adverse personnel action is presumed to be in retaliation for a whistleblower disclosure if that disclosure was made within two years of the adverse personnel action.

Specifically, although the rebuttable presumption enumerated in § 4-61dd (e) (4) applies to "any proceeding" under § 4-61dd (e) (2) or (3), this court concluded that the word "any" was ambiguous, and extratextual sources supported the conclusion that "any proceeding" should not include instances of an employee's self-reporting.

If this court were to apply the presumption under the circumstances of this case, the policy goal of the legislation would have been undermined because it generally would discourage an employer from taking corrective and deterrent action against an employee insofar as the employer would always be subject to an automatic presumption of retaliation, and employers would be encouraged either not to take corrective action or to wait two years before doing so.

Moreover, because state agencies often take corrective action within two years of learning of malfeasance, concluding that temporal proximity, without more, is probative of retaliatory intent would allow a self-reporting employee to automatically satisfy his or her burden under the first step of the burden shifting analysis recognized in *McDonnell Douglas*

Dept. of Public Health *v.* Estrada

*Corp.* v. *Green* (411 U.S. 792) without submitting evidence of retaliatory animus.

In the present case, E failed to produce any evidence of a retaliatory motive other than temporal proximity, there was no evidence that supported a conclusion that the department took the adverse personnel actions in retaliation for E's disclosure rather than for her underlying misconduct, and, although the human rights referee observed that the department had told E that she "was [being] punished for the . . . incident" involving W, this, alone, did not establish retaliatory motive, as it was E's failure to confirm W's credentials and the potentially improper approval of W's appointment that, in combination with additional instances of deficient work performance, led to the adverse personnel actions.

Furthermore, even if this court had concluded that the rebuttable presumption applied and that E established a prima facie case, the department would have rebutted this presumption by demonstrating that three union grievances led to a determination that the same adverse employment actions E challenged before the commission were taken for just cause, the evidence that the human rights referee credited supported the department's nonretaliatory justifications, including evidence that E exhibited poor work quality both before and after her disclosure, and E's first written reprimand was issued nearly one month after the disclosure, and then only after E again submitted another approval letter to the commissioner for his signature without first confirming the facts reported in connection with that approval.

Argued September 14, 2023—officially released June 11, 2024

*Procedural History*

Appeal from the decision of a human rights referee for the defendant Commission on Human Rights and Opportunities that the named defendant made a protected whistleblower disclosure for which the plaintiff had retaliated, brought to the Superior Court in the judicial district of New Britain, where the court, *Cordani, J.*, rendered judgment sustaining the appeal, from which the defendant Commission on Human Rights and Opportunities appealed to the Appellate Court, *Alexander, Suarez* and *DiPentima, Js.*, which affirmed the trial court's judgment, and the defendant Commission on Human Rights and Opportunities, on the granting of certification, appealed to this court. *Affirmed.*

Dept. of Public Health *v.* Estrada

*Anna-Marie Puryear*, human rights attorney, with whom was *Megan K. Graefe*, human rights attorney, for the appellant (defendant Commission on Human Rights and Opportunities).

*Michael K. Skold*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (plaintiff).

*Opinion*

McDONALD, J. In this whistleblower retaliation action, the named defendant, Juanita Estrada, who was employed by the plaintiff, the Department of Public Health (department), claims that she made a protected whistleblower disclosure; see General Statutes (Rev. to 2017) § 4-61dd;[1] when she notified her supervisor that (1) the acting director of health for the city of Hartford did not have a master's degree as he had represented on his resume, and (2) she had not confirmed his credentials at the time of his appointment. A human rights referee (referee) with the Office of Public Hearings of the defendant Commission on Human Rights and Opportunities (commission) concluded that Estrada's disclosure constituted a protected whistleblower disclosure. On appeal, the trial court concluded, among other things, that Estrada's disclosure to her supervisor did not constitute a whistleblower disclosure pursuant to § 4-61dd and that the commission lacked subject matter jurisdiction to adjudicate Estrada's complaint because she had brought the same adverse personnel actions at issue through the grievance procedures in her collective bargaining agreement. The commission appealed to the Appellate Court, which held that the trial court had incorrectly determined that the commission lacked subject matter jurisdiction to adjudicate Estrada's whistleblower retaliation complaint. See

---

[1] Hereinafter, all references to § 4-61dd are to the 2017 revision of the statute.

Dept. of Public Health *v.* Estrada

*Dept. of Public Health* v. *Estrada*, 211 Conn. App. 223, 226, 271 A.3d 1042 (2022). It also concluded, however, that the trial court correctly decided that Estrada did not make a protected whistleblower disclosure within the meaning of § 4-61dd. See id.

Estrada began working for the department in 1995 as an epidemiologist, and, by 2010, she had been promoted to epidemiologist 4. Since at least 2014, Estrada has had performance issues at the department. Estrada's supervisor, Ellen Blaschinski, downgraded her in some categories on her 2014 performance evaluation because she did not have a strong knowledge of the department's regulations and had not moved the department's Office of Local Health Administration (OLHA) in the regulatory direction that was expected. Shortly thereafter, Estrada mishandled a case involving the removal of a local health director, which required Blaschinski to relieve Estrada and take over the investigation herself. Estrada was then placed on a performance improvement plan.

Estrada's responsibilities as an epidemiologist 4 included, among other things, reviewing an applicant's qualifications to serve as director or acting director of health for a municipality. General Statutes (Rev. to 2015) § 19a-200[2] prescribes the minimum qualifications that a municipality's director of health must possess. At the time of the underlying events, that statute provided that the director of health for a municipality must be either a licensed physician and hold a degree in public health from an accredited institution or hold a graduate degree in public health from an accredited institution. General Statutes (Rev. to 2015) § 19a-200 (a). Section 19a-200 (a) also provides in relevant part: "In case of the absence or inability to act of a city, town

---

[2] Hereinafter, all references to § 19a-200 are to the 2015 revision of the statute.

Dept. of Public Health *v.* Estrada

or borough director of health or if a vacancy exists in the office of such director, the appointing authority of such city, town or borough may, with the approval of the [Commissioner of Public Health], designate in writing a suitable person to serve as acting director of health during the period of such absence or inability or vacancy . . . . The person so designated, when sworn, shall have all the powers and be subject to all the duties of such director. . . .''

To discharge its statutory responsibilities under the statute, "the customary process within the [department's division of] the OLHA was to review a letter from a municipality or a district board of health appointing an individual to a permanent or acting director of health [position]. Once the OLHA received the appointment letter from a municipality or the district board of health, [Estrada] would review the appointed individual's resume to ensure that it stated that the individual had a graduate degree from an accredited school." "Once [Estrada] reviewed the appointment letter and resume, she would then draft a letter for Blaschinski's review stating that the [department] approved the appointment. After Blaschinski reviewed the letter, she would send it [to] the commissioner of [the department] for [the commissioner's] review."

In May, 2015, Raul Pino, then director of health of the city of Hartford, submitted a letter requesting approval of Ruonan Wang as the city's acting director of health. Both the letter and Wang's resume stated that Wang held a master's degree in public health from the University of Connecticut. Estrada reviewed the request, including Wang's resume, and she drafted a letter approving the appointment for Blaschinski's review.[3]

_____

[3] There is some disagreement about whether department policy required Estrada to independently verify the information contained in Wang's resume. It is undisputed that Estrada's job required her to draft the approval letter for the commissioner's signature.

Dept. of Public Health *v.* Estrada

Estrada did not, however, verify that Wang had actually received a master's degree in public health. The letter was ultimately signed by the commissioner of the department, approving Wang's appointment as acting director of health for the city of Hartford.

Approximately one month later, a department employee notified Estrada that she had received information from an employee of the city of Hartford that Wang did not hold a master's degree in public health. After Estrada confirmed that Wang did not have a master's degree in public health, she notified Blaschinski, and Wang was removed from the position.

Estrada was required to log complaints and track them. Estrada had previously struggled with this task, and her performance improvement plan noted the need for her to improve in that area. When Blaschinski asked for a copy of the Wang complaint, however, she learned that Estrada had not logged it in. Nevertheless, Estrada was not disciplined by Blaschinski. Approximately one week following the Wang incident, Estrada again failed to check the credentials for the appointment of a municipality's acting director of health, this time for the town of Monroe. When Blaschinski learned of the repeated error, she issued Estrada a letter of reprimand.

In September, 2015, Blaschinski issued Estrada an unsatisfactory annual rating. About two months later, Blaschinski issued Estrada another letter of reprimand based on two incidents that reflected Estrada's ongoing resistance to her performance improvement plan. On the basis of these continued issues, Blaschinski gave Estrada an unsatisfactory interim service rating. Estrada received another unsatisfactory rating in her 2016 annual review, based in part on concerns over Estrada's handling of a complaint about a different town health director.

Dept. of Public Health *v.* Estrada

After being on a performance improvement plan for approximately two years, Estrada was ultimately demoted from epidemiologist 4 to epidemiologist 3. In sum, Estrada received three adverse personnel actions: the reprimand following the Wang and town of Monroe incidents, the second reprimand in November, 2015, and her demotion. Estrada grieved these personnel actions in accordance with her collective bargaining agreement pursuant to § 4-61dd (e) (3) but did not raise a whistleblower retaliation claim in the forum provided by that agreement. All the grievances were denied. In addition to filing the grievances, Estrada filed a whistleblower retaliation claim under § 4-61dd (e) (2) (A), based on the same personnel actions, with the commission.

In Estrada's amended complaint before the commission, she alleged that her report to Blaschinski, which stated that Wang did not possess a graduate degree in public health, disclosed a violation of § 19a-200 because the statute requires that a person nominated for the position of acting director of health hold a graduate degree in public health. She alleged that this new information constituted a protected whistleblower disclosure pursuant to § 4-61dd. Estrada further claimed that, after her report to Blaschinski, she was subjected to retaliation on multiple occasions. Estrada alleged that, in response to her disclosure, she received multiple "unwarranted and unjustified written reprimand[s]" and "negative and unsatisfactory performance appraisal[s]," and that she was demoted from the position of epidemiologist 4 to epidemiologist 3.

Following a hearing, the referee concluded that Estrada had made a protected whistleblower disclosure under § 4-61dd and that the department had retaliated against her. The department appealed to the Superior Court, which sustained the appeal and rendered judgment for the department. The trial court concluded that the com-

Dept. of Public Health *v.* Estrada

mission lacked subject matter jurisdiction to adjudicate the complaint, that Estrada had not made a protected whistleblower disclosure under § 4-61dd, and that Estrada had failed to establish a causal connection between any alleged whistleblower disclosure and the alleged retaliation. Thereafter, the commission appealed to the Appellate Court, which concluded that the commission had jurisdiction but nevertheless affirmed the judgment of the trial court on the merits. *Dept. of Public Health* v. *Estrada*, supra, 211 Conn. App. 226, 247. It concluded that, because § 19a-200 does not require an acting director of health to possess a graduate degree, Estrada's report about Wang's credentials did not disclose any violation of state law to which § 4-61dd applies. Id., 245–46. This certified appeal followed.[4]

On appeal, the commission contends that the Appellate Court properly held that the commission had subject matter jurisdiction over Estrada's complaint. On the merits, however, the commission contends that the Appellate Court incorrectly reasoned that an actual violation of a statute is required to satisfy a claim of whistleblower retaliation. Rather, the commission argues that an employee need only prove that he or she had a reasonable, good faith belief that the reported conduct violates state law. For its part, the department contends that the commission lacked subject matter jurisdiction over the complaint. It also contends that the commis-

_____

[4] We granted the commission's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the Office of Public Hearings of the [c]ommission . . . had subject matter jurisdiction to adjudicate [Estrada's] complaint of whistleblower retaliation under the waiver of sovereign immunity granted by . . . § 4-61dd when [Estrada] had also pursued union grievances with respect to the same adverse employment actions?" And (2) "[d]id the Appellate Court correctly conclude that a prima facie claim of retaliation under § 4-61dd requires a complainant to show that the claimed protected whistleblower disclosure established an actual violation of state law rather than a good faith reasonable belief that such a violation had occurred?" *Dept. of Public Health* v. *Estrada*, 343 Conn. 921, 921–22, 275 A.3d 211 (2022).

Dept. of Public Health *v.* Estrada

sion waived and abandoned its merits arguments by failing to raise and brief them, rendering that aspect of the appeal moot. Finally, if this court does reach the merits, the department agrees with the commission that employees need only have a reasonable and good faith belief that a violation of state law had occurred but claims that Estrada lacked such a belief.

Following oral argument, we ordered the parties to file supplemental briefs on the following questions: (1) "Did the Appellate Court correctly conclude that Estrada's disclosure was not a protected disclosure under . . . § 4-61dd? (A) Specifically, does § 4-61dd apply to purported misconduct in municipal government? (B) Can an employee seek whistleblower protection for reporting her own error?" (2) "Did Estrada establish a causal connection between any alleged whistleblower disclosure and the complained of personnel actions?" And (3) "[t]o the extent that an actual violation of state law is required to establish a prima facie claim of retaliation under . . . § 4-61dd, did the Appellate Court correctly conclude that there were no required qualifications for acting directors of public health under . . . § 19a-200?"

I

SUBJECT MATTER JURISDICTION

We begin with the department's contention that the commission lacked subject matter jurisdiction over Estrada's complaint.[5]

---

[5] The department also argues that the merits issues of this appeal are moot because the commission abandoned these arguments. See part II of this opinion. It further argues that any decision by this court on the abandonment issue would itself constitute a discretionary decision that necessarily constitutes an exercise of jurisdiction. Cf. *State* v. *Buhl*, 321 Conn. 688, 724–25 n.29, 138 A.3d 868 (2016). We agree with the department on this latter point and, therefore, consider the jurisdictional question before we consider the department's waiver arguments. See, e.g., *Baldwin Piano & Organ Co.* v. *Blake*, 186 Conn. 295, 297, 441 A.2d 183 (1982) ("[w]henever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed [on] before it can

349 Conn. 223 JUNE, 2024 235

Dept. of Public Health *v.* Estrada

The following additional facts and procedural history are relevant to this claim. In addition to filing its answer to Estrada's amended whistleblower retaliation complaint, the department also asserted numerous special defenses, including that "[t]he [commission] lacks subject matter jurisdiction over this complaint, as [Estrada] fail[ed] to make a valid claim of whistleblower retaliation, as required by . . . § 4-61dd." The department also filed a motion to dismiss and/or strike in which it argued, among other things, that the commission lacked "jurisdiction to hear a whistleblower claim for any of [Estrada's] alleged[ly] adverse personnel actions for which she has filed a grievance under her collective bargaining contract . . . because the two remedies are mutually exclusive," and that Estrada's claims did not "fall under the purview of . . . § 4-61dd and [were] therefore barred by sovereign immunity." This motion was denied by the referee. In its posthearing brief, the department reiterated these arguments related to subject matter jurisdiction.

The referee concluded that the commission had subject matter jurisdiction over Estrada's whistleblower retaliation complaint. On appeal, the trial court concluded that the commission lacked subject matter jurisdiction, reasoning that, because § 4-61dd "clearly provides a mutually exclusive choice in this regard, [Estrada was] precluded from relitigating the propriety of the same personnel actions before the [referee]. The statute offered [Estrada] a clear choice of either filing grievances or bringing the [present whistleblower retaliation] case to address the personnel actions, but not both." The Appellate Court ultimately rejected the department's jurisdictional argument, reasoning that "the department attempts to transform an election of remedies claim into an issue of subject matter jurisdic-

move one further step in the cause . . . as any movement is necessarily the exercise of jurisdiction" (internal quotation marks omitted)).

Dept. of Public Health *v.* Estrada

tion by implicating sovereign immunity.'' *Dept. of Public Health* v. *Estrada*, supra, 211 Conn. App. 234. The Appellate Court explained that, ''[w]hen a complainant elects to pursue one of the avenues provided for in § 4-61dd and then subsequently proceeds to pursue the second avenue, the issue concerns the complainant's election of remedies, not subject matter jurisdiction. Estrada's complaint to the [O]ffice of [P]ublic [H]earings, even if it is pursued after the initial grievance process, does not create a lack of subject matter jurisdiction. Instead, it may result in a want of a cause of action . . . which the department may challenge in a special defense.'' (Citation omitted; internal quotation marks omitted.) Id., 238–39.

''When reviewing an issue of subject matter jurisdiction on appeal, [w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal.'' (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

''Subject matter jurisdiction does not rest on the viability of the claims that a court is asked to adjudicate.'' (Internal quotation marks omitted.) *State* v. *Fairchild*, 155 Conn. App. 196, 206, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015). ''Subject matter jurisdiction involves the authority of a court to adjudicate the *type* of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a [court] has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining

Dept. of Public Health *v.* Estrada

the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; emphasis added; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999); see, e.g., *Pereira* v. *State Board of Education*, 304 Conn. 1, 43 n.30, 37 A.3d 625 (2012).

It is equally well established that "[t]he sovereign immunity enjoyed by the state is not absolute." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). There are three exceptions to sovereign immunity; relevant to this appeal is the first, which applies "when the legislature, either expressly or by force of a necessary implication, statutorily waives the state's sovereign immunity . . . . For a claim made pursuant to [this] exception, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . [When] there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . In the absence of a proper factual basis in the complaint to support the applicability of these exceptions, the granting of a motion to dismiss on sovereign immunity grounds is proper." (Citations omitted; internal quotation marks omitted.) Id., 349–50.

On appeal, the department contends that § 4-61dd (e) waives sovereign immunity, and the meaning of that waiver necessarily implicates sovereign immunity, not an election of remedies issue. According to the department, the "alternative" mechanisms in § 4-61dd (e) are mutually exclusive, and, therefore, the commission lacked subject matter jurisdiction because § 4-61dd (e) does not waive sovereign immunity with respect to duplicative claims. In this case, the department contends that,

Dept. of Public Health *v.* Estrada

after Estrada filed her grievances in accordance with her collective bargaining agreement, the commission lacked subject matter jurisdiction over her whistleblower retaliation claim because the legislature did not waive sovereign immunity for this second action, given that both actions arose from the same underlying facts. The commission disagrees and contends that, because the Appellate Court correctly concluded that § 4-61dd "confers on the [O]ffice of [P]ublic [H]earings the authority to adjudicate the type of controversy presented in this case"; *Dept. of Public Health* v. *Estrada*, supra, 211 Conn. App. 238; the commission had subject matter jurisdiction over Estrada's whistleblower retaliation claim. The commission also agrees with the Appellate Court that a choice of remedy under § 4-61dd raises an election of remedies issue, not a subject matter jurisdictional one.

The question of when the alternative remedies in § 4-61dd apply is a question of statutory interpretation over which we exercise plenary review. See, e.g., *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219 (2008). Accordingly, we review § 4-61dd in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019).

We begin with subdivision (1) of § 4-61dd (e), which provides in relevant part that "[n]o state officer or employee . . . shall take or threaten to take any personnel action against any state or quasi-public agency employee . . . *in retaliation for* (A) such employee's . . . disclosure of information to . . . (ii) an employee of the state agency or quasi-public agency where such state officer or employee is employed . . . ." (Emphasis added.) The disclosure that is protected under § 4-61dd is one related to "any matter involving corruption, unethical practices, violation of state laws or regula-

Dept. of Public Health *v.* Estrada

tions, mismanagement, gross waste of funds, abuse of authority or danger to the public safety occurring in any state department or agency . . . .'' General Statutes (Rev. to 2017) § 4-61dd (a). Thus, § 4-61dd protects a state employee from retaliation by a state employer for that employee's disclosure of certain information. In other words, the right provided by the statute is not to be retaliated against for engaging in a protected whistleblower activity. Section 4-61dd, then, waives sovereign immunity for claims that allege that the employee was retaliated against for disclosing information related to ''any matter involving . . . violation of state laws . . . .'' General Statutes (Rev. to 2017) § 4-61dd (a).

Section 4-61dd provides a state employee with multiple ways to bring such a claim. Subdivision (2) (A) of § 4-61dd (e) provides in relevant that, ''[n]ot later than ninety days after learning of the specific incident giving rise to *a claim that a personnel action has been threatened or has occurred in violation of subdivision (1) of this subsection*, a state or quasi-public agency employee . . . may file a complaint against the state agency . . . [or] quasi-public agency . . . concerning such personnel action with the Chief Human Rights Referee . . . .'' (Emphasis added.) Subdivision (3) of § 4-61dd (e) goes on to provide in relevant part that, ''[*a*]*s an alternative to the provisions of subdivision (2) of this subsection*: (A) A state or quasi-public agency employee who alleges that a personnel action has been threatened or taken may file an appeal not later than ninety days after learning of the specific incident giving rise to *such claim* with the Employees' Review Board under section 5-202, or, in the case of a state or quasi-public agency employee covered by a collective bargaining contract, in accordance with the procedure provided by such contract . . . .'' (Emphasis added.)

The department does not dispute that § 4-61dd contains a statutory waiver of sovereign immunity. Rather, the department argues that, because Estrada filed grievances challenging the same adverse personnel actions that form the basis of her whistleblower complaint, her whistleblower retaliation action falls outside of the waiver of sovereign immunity in § 4-61dd, and, therefore, the Office of Public Hearings lacks subject matter jurisdiction to hear Estrada's whistleblower claim. We disagree.

The plain language of § 4-61dd (e) (2) (A) provides that the authorized claim to be brought before the commission is one alleging that "a personnel action has been threatened or has occurred in violation of subdivision (1) of this subsection . . . ." Subdivision (1) of subsection (e) limits those claims to ones that allege that the employee was retaliated against for disclosing certain information. General Statutes (Rev. to 2017) § 4-61dd (e) (1). Indeed, the referee is limited to "issu[ing] a decision concerning whether the officer or employee taking or threatening to take the personnel action *violated any provision of this section*." (Emphasis added.) General Statutes (Rev. to 2017) § 4-61dd (e) (2) (A). Because the referee is vested only with the authority to decide whether the alleged conduct violates § 4-61dd, and the only right protected under this section is the right not to be retaliated against for whistleblowing activity, it is logical that the only type of claim that can be brought before the commission pursuant to § 4-61dd (e) (2) (A) is one that alleges whistleblower retaliation.

Subdivision (3) of § 4-61dd (e) provides the second and "alternative" mechanism for bringing a claim that an adverse personnel action has been taken or threatened. Specifically, the state employee may pursue "such claim" through the grievance process outlined in his or her collective bargaining agreement. Although subdivision (3) does not explicitly define the type of claim that

Dept. of Public Health *v.* Estrada

may be submitted through the grievance process that would trigger the alternative remedies scheme, the right provided for by § 4-61dd (e) (2) (A) is a right not to be retaliated against for disclosing certain whistleblower information. Cf. *Southern New England Telephone Co.* v. *Cashman*, 283 Conn. 644, 652, 931 A.2d 142 (2007) (''[i]n determining the meaning of a statute . . . [the court] look[s] not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of [its] construction'' (internal quotation marks omitted)). Put differently, the ''claim'' subject to the alternative scheme delineated in § 4-61dd (e) (3) is a claim for whistleblower retaliation—the same type of claim, with an alternative remedy, may be pursued under § 4-61dd (e) (2) (A).

It is important to note that human rights referees do not adjudicate collective bargaining agreements, and grievances do not address whistleblower retaliation claims unless specifically provided for in the employee's collective bargaining agreement. The department concedes that, ''when employees challenge a personnel action through the grievance process in § 4-61dd (e) (3), they do not technically bring a statutory whistleblower retaliation claim.'' An interpretation that an employee's filing of a grievance on a ground other than whistleblower retaliation under § 4-61dd (e) (3) precludes the employee's filing of a complaint of whistleblower retaliation under § 4-61dd (e) (2) (A) would force an employee to choose between vindicating his or her rights under the collective bargaining agreement or his or her rights under the whistleblower statute, even though the grievance was based on a ground other than retaliation. Such an interpretation would, at a minimum, be counterintuitive for a remedial statute, and we will not find such an intention by implication. Cf. *Meriden* v. *Freedom of Information Commission*, 338 Conn. 310, 328, 258 A.3d 1 (2021) (''we construe statutes to

Dept. of Public Health *v.* Estrada

avoid . . . absurd result[s]"). The statute allows an employee to pursue both grievances alleging contractual violations that do not implicate a whistleblower claim and whistleblower retaliation claims alleging retaliatory animus arising from the same underlying factual circumstances. As we have recognized, the same type of harm may be caused by many different motivations. See, e.g., *Graham* v. *Friedlander*, 334 Conn. 564, 586, 223 A.3d 796 (2020) ("the fact that the one kind of harm caused may also be the kind of harm caused in a case involving the denial of [another right] does not mean that this kind of harm cannot be caused by other actions").

We agree with a referee's succinct explanation in a similar case: "[A]n employee is required to make an election not as to where to challenge the specific incident but as to where to challenge *the underlying retaliatory animus* . . . . The phrase 'giving rise to such claim' [in § 4-61dd (e) (3)] . . . validates an interpretation that it is the retaliation claim that is at issue in § [4-61dd], not simply the specific incident." (Citations omitted; emphasis added.) *Saeedi* v. *Dept. of Mental Health & Addiction Services*, WBR/OPH No. 2008-090 (C.H.R.O. December 9, 2010) pp. 75–76, appeal dismissed, Superior Court, judicial district of New Britain, Docket No. HHB-CV-11-6008678-S (February 7, 2012), rev'd in part on other grounds sub nom. *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, 143 Conn. App. 839, 71 A.3d 619 (2013).

To the extent that the language of the statute creates ambiguity on this point, the legislative history also supports this interpretation. The sponsor of the 2002 amendment to § 4-61dd, which added the commission as a forum for the adjudication of whistleblower claims; see Public Acts 2002, No. 02-91, § 1; noted that the legislature intended to "create a more favorable environment whereby state workers . . . feel free to bring forth

Dept. of Public Health *v.* Estrada

important information . . . in order to protect the public tax dollar and the proper running of our government.'' 45 H.R. Proc., Pt. 9, 2002 Sess., p. 2857, remarks of Representative James A. O'Rourke III; see Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt. 1, 2002 Sess., p. 119, remarks of Attorney General Richard Blumenthal (bill is ''designed to promote law enforcement against waste and corruption in government by providing protection for people who risk their careers and livelihoods to come forward''). The legislature's goal was to create an alternative forum for whistleblower retaliation claims; accordingly, it is only a whistleblower retaliation claim that triggers the alternative remedy scheme under § 4-61dd.

We conclude that the alternative remedies enumerated in § 4-61dd (e) (2) (A) and (3) operate independently, in that the filing of a grievance under § 4-61dd (e) (3) on a ground other than whistleblower retaliation is not a ground for precluding an employee from bringing a whistleblower retaliation complaint before the commission pursuant to § 4-61dd (e) (2) (A).

Our holding in *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 1, is not to the contrary. We held in *White Oak Corp.* that the waiver of sovereign immunity set forth in General Statutes § 4-61, which waives the state's sovereign immunity with respect to certain claims arising under public works contracts, requires all existing disputed claims arising under a public works contract to be litigated or arbitrated in a single action. Id., 2–4, 6. This court reasoned that, ''[i]n light of the ambiguous language of the statute, and the dearth of any extratextual evidence indicating an affirmative legislative intent to enact a blanket waiver of sovereign immunity permitting a contractor to file multiple actions against the state, we are constrained to conclude that § 4-61 waives the state's sovereign immunity only with respect to a *single action or arbi-*

Dept. of Public Health *v.* Estrada

*tration wherein all existing disputed claims* arising under a public works contract must be pursued and resolved.'' (Emphasis added.) Id., 13–14. We found additional support for this conclusion in the legislative history, which provided that the goal of the legislation was to ''increas[e] the quality of construction in the state while, at the same time, reducing its cost by permitting contractors to sue the state directly to resolve disputed claims arising under public works contracts quickly and efficiently.'' Id., 14. We reasoned that, ''[i]f we were to construe § 4-61 as a blanket waiver of sovereign immunity that permits a contractor to file multiple actions against the state, the cost to the state of public works contracts effectively would increase while, at the same time, the speed and efficiency with which such claims are resolved effectively would decrease.'' Id.

The statute at issue in *White Oak Corp.* is distinguishable from § 4-61dd. The language in § 4-61 provides in relevant part that the plaintiff ''may, in the event of *any disputed claims* under [a public works] contract,'' bring an action in the Superior Court. (Emphasis added.) General Statutes § 4-61 (a). In contrast, § 4-61dd (e) provides in relevant part that a complainant may file a complaint with the commission within ninety days of ''the specific incident giving rise to *a claim that a personnel action has been threatened or has occurred in violation of subdivision (1) of this subsection* . . . .'' (Emphasis added.) General Statutes (Rev. to 2017) § 4-61dd (e) (2) (A). Whereas § 4-61 (a) covers ''any disputed claims,'' the similar provision in § 4-61dd (e) (2) (A) is concerned only with ''a claim that a personnel action has been threatened or has occurred in violation of'' the prohibition on whistleblower retaliation. Had the legislature intended to enact a statute that subjected ''any disputed claims'' to an alternative remedial scheme —rather than identifying one type of claim—it could have done so. Cf. *State* v. *Heredia*, 310 Conn. 742, 761,

Dept. of Public Health *v.* Estrada

81 A.3d 1163 (2013) (''[W]hen a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or [nonaction] will have [on] any one of them.'' (Internal quotation marks omitted.)).

Here, Estrada's grievances were not predicated on a claim of whistleblower retaliation. The first grievance filed by Estrada grieved the department's issuance of a letter of reprimand on July 7, 2015, contending that it was for an issue that did not constitute just cause. Specifically, this grievance referenced ''recent events involving the process used to confirm the credentials of local health directors.'' (Internal quotation marks omitted.) This grievance did not mention or concern whistleblower retaliation. It was ultimately denied. Estrada's second grievance ''echoe[d] [the] unresolved . . . grievance about reprimand for issues not constituting 'just cause' '' and concerned a reprimand that Estrada was issued on November 20, 2015, for ''poor work quality and poor judgment.'' This grievance similarly did not mention or concern whistleblower retaliation. It was also denied. Estrada's third grievance concerned her demotion from epidemiologist 4 to epidemiologist 3. The department responded to this grievance by claiming that ''[t]he central issue of this grievance is whether the demotion of [Estrada] to [e]pidemiologist 3 was for just cause under the contract.'' Although this grievance mentioned that Estrada had ''filed a whistleblower complaint regarding the incident [that] led to the reprimand,'' this issue was not discussed or resolved during the grievance process. The department's conclusion with respect to this grievance was

Dept. of Public Health *v.* Estrada

that the decision to demote Estrada had been "for just cause," there was "no contract violation," and, therefore, "the grievance must be denied."

Because Estrada's grievances did not raise a claim of whistleblower retaliation, they do not fall within the ambit of the alternative remedies scheme in § 4-61dd (e) (3). Thus, the mutual exclusivity provision of § 4-61dd was not triggered, and Estrada was not barred from filing a complaint with the commission alleging whistleblower retaliation pursuant to § 4-61dd (e) (2) (A). The commission had the authority to adjudicate the type of controversy before it and, therefore, had subject matter jurisdiction over the action, regardless of its merits. See, e.g., *Amodio* v. *Amodio*, supra, 247 Conn. 727–28. As the Appellate Court correctly noted, "[t]here is no dispute that § 4-61dd contains a waiver of sovereign immunity and confers on the [commission] the authority to adjudicate the type of controversy presented in this case: a whistleblower retaliation claim. The fact that the statute also provides for an 'alternative' avenue for a complainant to seek redress for adverse personnel actions taken in retaliation for a whistleblower disclosure; General Statutes [Rev. to 2017] § 4-61dd (e) (3); does not deprive the [O]ffice of [P]ublic [H]earings of subject matter jurisdiction [over] the claim." *Dept. of Public Health* v. *Estrada*, supra, 211 Conn. App. 238.

We agree with the Appellate Court that the proper avenue for addressing allegedly duplicative claims under § 4-61dd is a special defense raising an election of remedies claim. See id., 238–39. "As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 501, 853 A.2d 460 (2004). We have held that an election of remedies claim

Dept. of Public Health *v.* Estrada

is properly raised by a special defense rather than as a challenge to the jurisdiction of the court.

In *Grant* v. *Bassman*, 221 Conn. 465, 604 A.2d 814 (1992), we held that a defendant's claim that the plaintiffs had made an exclusive election of workers' compensation pursuant to General Statutes (Rev. to 1991) § 31-284 (a) was not raised properly by a motion to dismiss challenging the court's subject matter jurisdiction and should have been raised in a special defense. See id., 469–70, 473. In that case, an employee who was a minor was injured at work and applied for, and began receiving, workers' compensation benefits for his injuries. Id., 468. Thereafter, the injured employee and his mother filed a personal injury action against the defendant employer and its president, seeking damages for injuries sustained by the employee. Id., 466. The defendant employer moved to dismiss the plaintiffs' complaint, arguing that the trial court lacked subject matter jurisdiction because the employee had applied for and received workers' compensation benefits for those injuries. Id. This court explained that "[t]he purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The claim that a plaintiff has elected an exclusive remedy relies on facts outside those alleged in the complaint that operate to negate what may once have been a valid cause of action. . . . It is therefore both rational and fair to place the burden of pleading and proving an election of remedies on the party asserting the claim, usually the defendant." (Citations omitted.) Id., 472–73. The court concluded that a special defense, and not a motion to dismiss, was the proper procedural mechanism for the defendant employer's challenge to the plaintiffs' complaint. Id., 473.

The Appellate Court has addressed the same issue with regard to whistleblower retaliation claims. In *Com-*

*missioner of Mental Health & Addiction Services* v. *Saeedi*, supra, 143 Conn. App. 839, the defendant employee filed a whistleblower retaliation complaint with the Office of Public Hearings in which he alleged that he had been subjected to retaliation for making a whistleblower disclosure pursuant to § 4-61dd. Id., 845. The plaintiffs filed, among other things, a motion to dismiss in which they alleged that the Office of Public Hearings did not have subject matter jurisdiction because the defendant had filed grievances through his union and, therefore, had elected to pursue his remedies though his collective bargaining agreement. Id., 846. On appeal to the Appellate Court, the plaintiffs argued "that [the defendant's] use of the grievance process served to invalidate [the defendant's] claims because he chose to pursue them through the forum provided by the collective bargaining agreement. . . . [The plaintiffs] claim[ed] that [the defendant's] claims should have been dismissed because § 4-61dd requires the employee to elect an exclusive forum in which to pursue these claims, and [the defendant] elected his exclusive forum when his union filed its grievances." (Footnote omitted; internal quotation marks omitted.) Id., 855–56. The Appellate Court declined to review the plaintiffs' claim because it was raised for the first time on appeal. See id., 856–57. The court stated, however, that "[t]he plaintiffs' abandonment of their jurisdictional argument [was] unsurprising considering [this court's] holding in *Grant* v. *Bassman*, [supra, 221 Conn. 472]." *Commissioner of Mental Health & Addiction Services* v. *Saeedi*, supra, 856 n.16.

Here, the department pleaded special defenses in its answer to Estrada's complaint. It also pleaded special defenses in response to Estrada's amended complaint. None of these special defenses, however, raised an election of remedies claim. The subject matter jurisdiction issue was raised by the department in a motion to dis-

Dept. of Public Health *v.* Estrada

miss and/or strike. When an employee elects to pursue one of the avenues provided for in § 4-61dd and then subsequently proceeds to pursue the second avenue, the issue concerns the employee's election of remedies, not subject matter jurisdiction. Estrada's complaint to the commission, even if it was filed after the initial grievance process, did not create a lack of subject matter jurisdiction. Instead, it may have resulted in "a want of a cause of action"; (emphasis omitted; internal quotation marks omitted) *Grant* v. *Bassman*, supra, 221 Conn. 472; which the department could have raised in a special defense. See id., 473. The department should have pleaded its election of remedies argument as a special defense if it wished to make such a claim. In failing to do so, it has waived that issue.

Accordingly, we conclude that the commission had subject matter jurisdiction to adjudicate Estrada's whistleblower retaliation claim.

## II

## WAIVER

The department next raises two waiver arguments. First, the department argues that the commission waived and abandoned its merits arguments by failing to raise and brief all but one of them before this court, rendering that aspect of this appeal moot. Second, the department argues that the one merits issue the commission does address in its brief was also abandoned because the commission had failed to raise or brief that issue before the Appellate Court. Specifically, the department contends that the lower courts sustained its appeal on several merits grounds: "(1) Estrada's report concerned misconduct in municipal government to which § 4-61dd does not apply; (2) Estrada's report did not concern a violation of state law by Wang, the city of Hartford, or [the department], and Estrada did not have a good faith belief to the contrary; (3) if any

Dept. of Public Health *v.* Estrada

errors in state government occurred, they were Estrada's, and she cannot seek whistleblower protection for reporting her own error; (4) § 4-61dd does not transform Estrada into a whistleblower for doing what 'she was obliged by her normal work responsibilities' to do; and (5) there [is] no causal connection between Estrada's report and her subsequent discipline, which was instead based on Estrada's underlying mistakes and ongoing performance issues over a four year period.'' Therefore, the department contends, because the commission fails to mention or challenge all but one of those grounds in its brief, it has abandoned any argument on the unbriefed grounds.

''It is well settled that, in a certified appeal, the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. . . . The only questions that we need consider are those squarely raised by the petition for certification, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court.'' (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 221, 926 A.2d 633 (2007); see, e.g., id., 222–23 (declining to consider issue that was not briefed before Appellate Court and not raised in petition for certification). Practice Book § 84-9 limits those issues that the appellant can present on appeal to ones ''set forth in the petition for certification, except where the issues are further limited by the order granting certification.'' See, e.g., *State* v. *Turner*, 334 Conn. 660, 686 n.13, 224 A.3d 129 (2020) (appellant ''may present only those issues for which certification has been granted'').

We are also mindful that ''[o]ur rules of preservation apply to claims, but they do not apply to legal arguments, and, therefore, [this court] may . . . review legal arguments that differ from those raised below if they are subsumed within or intertwined with arguments related to the legal claim before the court.'' (Inter-

Dept. of Public Health *v.* Estrada

nal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, 334 Conn. 636, 644 n.2, 224 A.3d 147 (2020).

This case presents a unique situation in which the petition for certification and the statement in response to the petition indicate that certification was sought regarding two main questions: (1) whether the commission had subject matter jurisdiction, and (2) whether the Appellate Court properly held that Estrada's disclosure was not a protected disclosure under § 4-61dd. Although, in its petition for certification, the commission broke this second question into four interrelated questions, it is fair to characterize them as falling within the department's broader second question. This court granted certification on the jurisdictional question and a narrower second question focusing only on the actual violation of a statute or a reasonable, good faith belief that such a violation had occurred. See footnote 4 of this opinion. Accordingly, the commission limited its briefing to this question and the jurisdictional question. Unlike cases in which an unpreserved claim was not raised before the Appellate Court or not raised in a petition for certification, in the present case, the petition filed by the commission satisfied both of these requirements. "[A]lthough [this] court is not bound to consider claims that were not raised at trial [or in the Appellate Court], it has the authority to do so in its discretion . . . ." (Emphasis omitted.) *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 143, 84 A.3d 840 (2014). Interests of justice weigh heavily in favor of not penalizing the commission for this court's certification of a more narrowly tailored question than what the parties had requested. Cf. id., 160 ("interests of justice, fairness, integrity of the courts and consistency of the law significantly outweigh the interest in enforcing procedural rules governing the preservation of claims"). Cases cited by the department are inapposite because they do not involve situations

Dept. of Public Health *v.* Estrada

in which this court failed to certify a question requested by the parties.

The department also argues that the commission abandoned the one merits issue it does address before this court by failing to raise or brief that issue in the Appellate Court, which did not decide that issue. The department contends that the commission did not argue in its appeal to the Appellate Court that § 4-61dd protected Estrada because she had a reasonable and good faith belief that a violation of the statute had occurred. This claim of abandonment is unpersuasive. The department conflates the distinction between arguments and claims. The commission's claim has consistently been that Estrada made a protected whistleblower disclosure pursuant to § 4-61dd. The trial court and the Appellate Court each characterized the issue raised by the commission broadly. The argument as to whether Estrada needed to prove an actual violation of state law or a reasonable, good faith belief of such a violation is "subsumed within or intertwined with" the broader legal claim of whether her disclosure was a whistleblower disclosure under the statute. (Internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, supra, 334 Conn. 644 n.2. It should also be noted that the department never argued that this broader claim was abandoned in its response to the commission's petition for certification; rather, it agreed that this court should take up the issue. Cf. U.S. Sup. Ct. R. 15.2 (effective January 1, 2023) ("Counsel are admonished that they have an obligation to the Court to point out in the brief in opposition, and not later, any perceived misstatement made in the petition. Any objection to consideration of a question presented based on what occurred in the proceedings below, if the objection does not go to jurisdiction, may be deemed waived unless called to the Court's attention in the brief in opposition.").

Dept. of Public Health *v.* Estrada

Accordingly, we ordered the parties to file supplemental briefing on the broader question on which the parties' sought certification. We conclude that the commission did not waive its merits arguments, and, as a result, this appeal is not moot. Thus, we will consider the merits of the commission's appeal.

III

WHISTLEBLOWER RETALIATION

We now turn to the commission's contention that Estrada's disclosure constituted a protected whistleblower disclosure.

At the outset, we note our agreement with the parties that § 4-61dd claims should be analyzed using the three part, burden shifting framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–805, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) (*McDonnell Douglas*). See, e.g., *Eagen* v. *Commission on Human Rights & Opportunities*, 135 Conn. App. 563, 577–79 and n.5, 42 A.3d 478 (2012); see also, e.g., *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, 216 Conn. 40, 53–54, 578 A.2d 1054 (1990).

A

Applicability of § 4-61dd to Purported Misconduct
in Municipal Government

The department contends that Estrada's statement to her supervisor, Blaschinski, was not a protected disclosure because § 4-61dd does not apply to misconduct in municipal government. Specifically, the department frames the issue as Wang's misrepresentation on his resume and his resulting appointment as acting director of health for the city of Hartford. The department notes that § 4-61dd (a) applies to misconduct occurring in only three enumerated contexts, namely, in (1) "any state department or agency," (2) "any quasi-public agency,"

Dept. of Public Health *v.* Estrada

or (3) "any large state contract . . . ." General Statutes (Rev. to 2017) § 4-61dd (a). Because municipalities are not included in this list, the department contends that the protections of § 4-61dd are not applicable in this case. The commission contends that § 4-61dd applies to purported misconduct in municipal government in situations in which the state is "substantially involved." The commission also contends, however, that we need not reach this issue because the error reported by Estrada to Blaschinski was that the department, a state agency, erred in approving Wang for the position of acting director of health. We agree with the commission that we need not reach this issue.

Although Wang may have misrepresented his credentials on his resume, which would have amounted to misconduct at the municipal level, the record is clear that Estrada reported wrongdoing by the department— namely, its deficient review process of an appointee's credentials and its erroneous approval of Wang—and her own failure to verify that Wang had the degree he claimed to have on his resume. The referee found that Estrada had "told [Blaschinski] that Wang did not possess the proper credentials to be interim director of health, which violated . . . § 19a-200." Whether Estrada was reporting her own error in failing to ensure Wang's credentials were accurate or revealing that the department had no policy to guide the review of credentials for prospective acting directors of health, Estrada's disclosure concerned the misconduct of a state department and/or employee—even if there was also misconduct by Wang at the municipal level.[6] Any error at the city's level did not obviate the department's obligation to review Wang's credentials or the department's

---

[6] The department's one page analysis of this issue does not address why Estrada's failure to investigate or the department's failure to have a policy does not amount to allegations of misconduct of a state department or employee.

Dept. of Public Health *v.* Estrada

error in ultimately approving Wang. Accordingly, even if § 4-61dd does not apply to purported misconduct in municipal government, it applies in this case because Estrada reported alleged misconduct at the state level.

B

Whistleblower Protection for Reporting Employee's Own Error

The parties agree that, at least in some circumstances, the text of § 4-61dd and the policy behind it support the conclusion that employees might be entitled to whistleblower protection when they self-report. Specifically, the commission correctly points out that the statute protects reporting by state employees "having knowledge of *any matter involving* . . . violation of state laws . . . mismanagement . . . or danger to the public safety" in applicable scenarios who report that information to a covered entity. (Emphasis added.) General Statutes (Rev. to 2017) § 4-61dd (a); see also General Statutes (Rev. to 2017) § 4-61dd (e). The department notes, however, that whistleblower statutes cannot "be used by employees to shield themselves from the consequences of their own misconduct or failures." *Trimmer* v. *United States Dept. of Labor*, 174 F.3d 1098, 1104 (10th Cir. 1999). To avoid such a result, the department argues, these claims must be resolved through the causal connection prong of the *McDonnell Douglas* test; see, e.g., *Arnone* v. *Enfield*, 79 Conn. App. 501, 507, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003); see also *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802; under which the self-reporting employee must present evidence of retaliatory intent beyond the simple fact that the employer promptly disciplined the employee for the same misconduct the employee reported. For the reasons that follow, we agree that, as long as the self-reporting employee can prove the necessary causal nexus between the act of

Dept. of Public Health *v.* Estrada

reporting and the ensuing discipline, that employee is entitled to receive whistleblower protection for reporting his or her own error.

There are two important phrases in § 4-61dd that support this conclusion. First, the statute provides that "[a]ny person" who discloses covered information is included under the statute. General Statutes (Rev. to 2017) § 4-61dd (a). Second, the statute covers "any matter involving" various types of misconduct specified in the statute. General Statutes (Rev. to 2017) § 4-61dd (a). The broad language of each of these phrases is consistent with the remedial purpose of § 4-61dd, which is to "root out" misconduct in government. *Hartford County Sheriffs Dept. Communities Charities Assn.* v. *Blumenthal*, 47 Conn. Supp. 447, 459, 806 A.2d 1158 (2001). It is well settled that remedial statutes are interpreted broadly to effectuate their purpose. See, e.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 137, 827 A.2d 659 (2003).

We recognize that this court has previously concluded that the word "any" "can have a variety of meanings," depending on the statutory context, including "all, every, some or one." (Internal quotation marks omitted.) *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 531, 839 A.2d 1250 (2004). But, as the department concedes, to the extent that there is ambiguity in the language of the statute, extratextual sources resolve any ambiguity in favor of a broader interpretation. See General Statutes § 1-2z (permitting resort to extratextual sources if statutory language is ambiguous). First, it is unlikely that the legislature would have wanted employees disciplined for bringing their own actions to light, as that would discourage disclosure and undermine the statutory goals. See, e.g., 45 H.R. Proc., supra, pp. 2857, 2877 (original intent of statute was "to protect people who have found some [wrongdoing] in a state

349 Conn. 223 JUNE, 2024 257

Dept. of Public Health *v.* Estrada

agency'' and to encourage people ''to bring forth important information . . . in order to protect . . . the proper running of our government''); Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt. 2, 1998 Sess., p. 281, remarks of Attorney General Blumenthal (value of whistleblowers is that they ''very simply are often the best watchdogs when something goes wrong in state programs''); 22 S. Proc., Pt. 17, 1979 Sess., p. 5648, remarks of Senator Clifton A. Leonhardt (''I think it's very important that state employees who come across malfeasance or inefficiencies or incompetence be encouraged to report these [wrongdoings] to their superiors'').

Second, since § 4-61dd was enacted in 1979, the legislature has consistently extended the reach of the statute. See, e.g., Public Acts 1997, No. 97-55 (extending coverage to employees of quasi-public agencies); Public Acts 1998, No. 98-191, § 1 (protecting disclosures relating to large state contractors); Public Acts 2002, No. 02-91, § 1 (adding rebuttable presumption to antiretaliation provision); Public Acts 2011, No. 11-48, § 17 (extending filing deadline for whistleblower complaints from thirty days to ninety days). At no time has the legislature imposed limitations on the statute's coverage that would suggest an intention to exclude employees.

Finally, because remedial statutes are construed broadly to effectuate their purpose, exceptions to those statutes should be construed narrowly. See, e.g., *Commission on Human Rights & Opportunities* v. *Edge Fitness, LLC*, 342 Conn. 25, 37, 268 A.3d 630 (2022). Section 4-61dd does not contain an exception for state employees who report their own errors, and there is no indication in the legislative history of such an implied exception to the phrase ''[a]ny person'' in § 4-61dd (a). Supplying an exception, when not explicitly provided by the legislature, for state employees who self-report would dilute the efficacy of the statute by creating perverse incen-

Dept. of Public Health *v.* Estrada

tives. Employees who were involved in any of the misconduct would be discouraged from coming forward because their disclosure would not entitle them to any protections. The department concedes as much. Thus, we conclude that, so long as an employee can prove causation (i.e., that he or she was disciplined as a result of the *disclosure* and not the underlying *conduct*), the employee is entitled to receive whistleblower protection despite his or her involvement in the facts giving rise to the disclosure.[7]

---

[7] In related contexts, federal courts agree that self-reporting can be a protected activity but also emphasize that whistleblower statutes cannot "be used by employees to shield themselves from the consequences of their own misconduct or failures." *Trimmer* v. *United States Dept. of Labor*, supra, 174 F.3d 1104; see, e.g., *Smith* v. *Dept. of Labor*, 674 Fed. Appx. 309, 316 (4th Cir. 2017) (holding that whistleblowers cannot "shield [themselves from the consequences of] their own misconduct by providing negative information about their own activities" and that "[the] [p]rotected activity will not shield an [underperforming] worker from discipline" (internal quotation marks omitted)); *Kahn* v. *United States Secretary of Labor*, 64 F.3d 271, 279 (7th Cir. 1995) ("[an employee's] attempt to hide behind his protected activity as a means to evade termination [of employment] for [nondiscriminatory] reasons is flawed"); see also, e.g., *Norfolk Southern Railway Co.* v. *United States Dept. of Labor*, Docket No. 21-3369, 2022 WL 17369438, *10 (6th Cir. December 2, 2022) ("employees cannot immunize themselves against wrongdoing by disclosing it" (internal quotation marks omitted)); *Dakota, Minnesota & Eastern Railroad Corp.* v. *U.S. Dept. of Labor Administrative Review Board*, 948 F.3d 940, 946 (8th Cir. 2020) (same); *BNSF Railway Co.* v. *United States Dept. of Labor*, 816 F.3d 628, 639 (10th Cir. 2016) (same). We agree with the department that these cases rightly direct courts to allow whistleblower protection for an employee who reports his or her own error if the employee is able to demonstrate causation. The relevant question is whether the employer disciplined the employee for the disclosure itself or the underlying conduct. See, e.g., *Smith* v. *Dept. of Labor*, supra, 316–18; *BNSF Railway Co.* v. *United States Dept. of Labor*, supra, 638–41.

We also note that, when there are "dual motives" for the adverse personnel action, under the *McDonnell Douglas* three part, burden shifting framework, "once the [employee] has shown that the protected activity played a role in the employer's decision . . . the employer has the burden to prove by a preponderance of the evidence that it would have [discharged] the employee even if the employee had not engaged in the protected conduct." (Citation omitted; internal quotation marks omitted.) *Kahn* v. *United States Secretary of Labor*, supra, 64 F.3d 278; see also *Mt. Healthy City School District Board*

Dept. of Public Health *v.* Estrada

In the present case, we conclude that Estrada's disclosure falls within the protection of § 4-61dd (a) and its broad definition of "any matter involving . . . violation of state laws . . . mismanagement . . . or danger to the public safety," despite her involvement in the actions giving rise to the disclosure. Her disclosure exposed the fact that the department had approved an acting director of health arguably in violation of § 19a-200 because the acting director did not have the master's degree he claimed to have on his resume. The disclosure also brought to light the deficient review process that led to the error of approving Wang. Specifically, the disclosure reported that the department had no policy to guide the review of credentials for prospective acting directors. Blaschinski testified that "she did not have personal knowledge of the customary procedure or whether there was even a policy in place about reviewing credential[s]." Following Estrada's disclosure, the department implemented a policy for reviewing credentials for acting directors. The policy "does not require the [department] to undertake independent verification of the appointed individual's credentials;

*of Education* v. *Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977) (first to set forth dual motive discharge test). In cases in which the employee has proven that the employer had an illegal motive to discharge the employee, the burden of proof fairly rests with the employer because "[t]he employer is a wrongdoer; [the employer] has acted out of a motive that is declared illegitimate by the statute. It is fair that [the employer] bear the risk that the influence of legal and illegal motives cannot be separated . . . because the risk was created . . . by [the employer's] own wrongdoing." *National Labor Relations Board* v. *Transportation Management Corp.*, 462 U.S. 393, 403, 103 S. Ct. 2469, 76 L. Ed. 2d 667 (1983), overruled in part on other grounds by *Director, Office of Workers' Compensation Programs, Dept. of Labor* v. *Greenwich Collieries*, 512 U.S. 267, 114 S. Ct. 2251, 129 L. Ed. 2d 221 (1994). Once the employer satisfies its burden, either of persuasion or production, the rebuttable presumption that the employee was discharged for impermissible factors is dissolved. See, e.g., *Loyd* v. *Phillips Bros., Inc.*, 25 F.3d 518, 522 (7th Cir. 1994). The employee is then required to prove that the employer's proffered reason for the termination of employment is a mere pretext for an unlawful discharge. See, e.g., *Fisher* v. *Transco Services-Milwaukee, Inc.*, 979 F.2d 1239, 1243 (7th Cir. 1992).

Dept. of Public Health *v.* Estrada

instead, the local health department provides the OLHA with a copy of the appointed individual's transcript or diploma.''

Concluding that Estrada's disclosure did not fall within the ambit of § 4-61dd due to her involvement in the underlying conduct would disincentivize her and other state employees, out of fear that they may face disciplinary consequences as a result of self-reporting, from disclosing ''malfeasance or inefficiencies or incompetence . . . .'' 22 S. Proc., supra, p. 5648, remarks of Senator Leonhardt. Affording this disclosure protection under § 4-61dd would encourage state employees ''to report these [wrongdoings] to their superiors . . . .'' Id. Accordingly, the broad language of the statute, the legislative history, and the remedial policy of the statute compel the conclusion that an employee may seek whistleblower protection for reporting his or her own error under § 4-61dd.

C

Causation

The department contends that Estrada failed to prove causation and that the referee mistakenly concluded that the department had retaliated against Estrada for reporting her errors instead of for making those errors. The department argues that the referee improperly (1) presumed a retaliatory motive under § 4-61dd (e) (4), and (2) excluded three grievance decisions establishing the department's nonretaliatory grounds for discipline. The commission contends that Estrada established a causal connection by inference. The commission also points to the two year statutory presumption in § 4-61dd (e) (4) and contends that, because Estrada blew the whistle within two years of the adverse personnel action, there was a rebuttable presumption that the adverse personnel action was in retaliation for the whistleblower disclosure. The department contends that this

Dept. of Public Health *v.* Estrada

presumption should not apply when a whistleblower reports his or her own error, and, even if it does, the department rebutted this presumption.[8] We agree with the department.

We begin by considering whether the two year statutory presumption applies when an employee reports his or her own error. Section 4-61dd (e) (4) provides in relevant part that, "[i]n any proceeding under subdivision (2) or (3)" of § 4-61dd (e), if the "personnel action occurs not later than two years after the employee first [makes a protected disclosure] . . . there shall be a rebuttable presumption that the personnel action is in retaliation" for that disclosure.

As we explained in part III B of this opinion, the word "any" is ambiguous, and can refer to "all, every, some or one," depending on the statutory context.[9] (Internal quotation marks omitted.) *Ames* v. *Commissioner of Motor Vehicles*, supra, 267 Conn. 531. Given this ambiguity, we may look to extratextual sources for interpretive guidance; see General Statutes § 1-2z; and there are several such sources that support the conclusion that "any proceeding" should not include instances of self-reporting for purposes of the statutory presumption. First, as the department points out, the goal of § 4-

[8] The department had not previously advanced this argument but urges this court to consider it because it is merely a new "point or line of reasoning made in support of" the broader issue about why Estrada failed to make a prima facie case. (Internal quotation marks omitted.) *Jobe* v. *Commissioner of Correction*, supra, 334 Conn. 644 n.2. We agree that this is merely a different argument and not a new claim. See, e.g., id. Moreover, the commission has briefed the applicability of the statutory presumption, so this court has the benefit of thorough briefing on the issue.

[9] Even if the term "any proceeding" is not ambiguous, concluding that the statutory presumption applies in situations in which an employee reports his or her own misconduct would lead to absurd and unintended consequences that we discuss subsequently in this opinion. See, e.g., *Desrosiers* v. *Diageo North America, Inc.*, 314 Conn. 773, 784–86, 105 A.3d 103 (2014) (plain and unambiguous text is not dispositive when it creates absurd results that defeat legislative intent).

Dept. of Public Health *v.* Estrada

61dd is to create a better functioning government by encouraging employees to disclose misconduct so that appropriate corrective action can be taken to remedy the problem. The statute's protections are the means to the end of "root[ing] out waste and corruption in government . . . ." *Hartford County Sheriffs Dept. Communities Charities Assn.* v. *Blumenthal*, supra, 47 Conn. Supp. 459; see 45 H.R. Proc., supra, p. 2857, remarks of Representative O'Rourke (statute's protections exist "in order to protect the public tax dollar and the proper running of our [state] government").

Construing the two year statutory presumption to apply in this case would undermine the policy goal of the legislation. Such an interpretation would prevent an employer from taking corrective and deterrent action against the employee because the employer would always be subjected to an automatic presumption of retaliation. The effect would be that employers either would not take corrective action or would wait two years to take corrective action, thwarting the statutory policy of deterrence and accountability. It would be of little use if an employee reported his or her misconduct, but the employer could not take corrective action with respect to that misconduct. Indeed, it does not make practical sense to shift the burden to the employer to justify its action after an employee has admitted to his or her own misconduct. For example, if an employee admitted to stealing thousands of dollars from an employer, it would not be reasonable to infer that the employee was disciplined for the disclosure rather than for the theft itself.

State agencies often, and should, take corrective action within two years of learning of malfeasance. That is precisely what § 4-61dd intends. Temporal proximity will always be present in these types of cases but will not be, without more, probative of retaliatory intent. To conclude otherwise would allow every self-reporting

349 Conn. 223 JUNE, 2024 263

Dept. of Public Health *v.* Estrada

employee to automatically satisfy his or her burden under the first step of the *McDonnell Douglas* analysis and to move to a modified second step pursuant to which the employer immediately has the burden to affirmatively disprove the employee's claim, all without the employee ever submitting any evidence of a retaliatory animus for the disclosure. See *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802–805 (employee bears initial burden to make prima facie case of discrimination, employer then must produce evidence of legitimate, nondiscriminatory reason for adverse personnel action, and burden then shifts back to employee to show that employer's proffered reason is pretextual); see also, e.g., *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54 (adopting well established employment discrimination burden shifting analysis of *McDonnell Douglas* for use in discrimination or wrongful discharge cases brought under General Statutes § 31-290a, which is provision designed to protect employees who file for workers' compensation benefits).[10]

---

[10] Under the *Ford* analysis, "[t]he plaintiff bears the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, *the plaintiff must present evidence that gives rise to an inference of unlawful discrimination.* . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." (Citations omitted; emphasis added; internal quotation marks omitted.) *Ford* v. *Blue Cross & Blue Shield of Connecticut, Inc.*, supra, 216 Conn. 53–54.

We note that the Appellate Court has approved of the use of the *McDonnell Douglas* framework in the context of retaliatory discharge claims, brought pursuant to General Statutes § 31-226a, for retaliation against employees assisting former employees with the filing of claims for unemployment compensation; see *Beizer* v. *Dept. of Labor*, 56 Conn. App. 347, 354–56, 742 A.2d 821, cert. denied, 252 Conn. 937, 747 A.2d 1 (2000); in the context of retaliatory discharge claims, brought pursuant to § 31-290a, for the discharge of employees after they file for workers' compensation benefits; see *Otero* v. *Housing Authority*, 86 Conn. App. 103, 104–105, 108–109, 860 A.2d 285

Dept. of Public Health *v.* Estrada

Federal case law similarly treats self-reporting as an "exception to [the normal causation] rule" that requires the employee "to show more" than just that the report led to the adverse personnel action. *BNSF Railway Co.* v. *United States Dept. of Labor*, 816 F.3d 628, 639 (10th Cir. 2016); see, e.g., *Dakota, Minnesota & Eastern Railroad Corp.* v. *U.S. Dept. of Labor Administrative Review Board*, 948 F.3d 940, 946 (8th Cir. 2020). The relevant question is whether the employer disciplined the employee for the disclosure itself or the underlying conduct. See, e.g., *Smith* v. *Dept. of Labor*, 674 Fed. Appx. 309, 316–18 (4th Cir. 2017); *BNSF Railway Co.* v. *United States Dept. of Labor*, supra, 638–41.

In the present case, Estrada failed to produce any evidence of a retaliatory motive other than temporal proximity. There is no evidence that supports a conclusion that the department took the adverse personnel actions in retaliation for the disclosure rather than for the underlying misconduct. Estrada could have alleged, but did not, that she was treated differently from other employees who made similar mistakes, that her supervisors attempted to dissuade her from reporting or threatened her with discipline if she did, or that her supervisors already knew of her mistakes but ignored them until after she made the public disclosure. See, e.g., *Dakota, Minnesota & Eastern Railroad Corp.* v. *U.S. Dept. of Labor Administrative Review Board*, supra, 948 F.3d 947. Rather, the evidence establishes that Blaschinski did not reprimand Estrada or take any other disciplinary action when Estrada made the disclosure regarding Wang and, instead, tried to address the underlying mistake and to prevent its recurrence by explaining to Estrada "the critical importance of ensur-

(2004); and in the context of whistleblower claims for retaliation, brought pursuant to General Statutes § 31-51m (b), for the discharge of employees who report employers for suspected violations of state or federal law. See *Arnone* v. *Enfield*, supra, 79 Conn. App. 506–507.

Dept. of Public Health *v.* Estrada

ing [that future] documents that are submitted for the [department] [c]ommissioner's signature . . . [are] accurate.'' It was only after Estrada made the same mistake again one week later that the department reprimanded her. The only evidence to the contrary that the referee identified at the prima facie step of the analysis was the fact that the department told Estrada she ''was [being] punished for the Wang incident.'' But this alone does not establish retaliatory motive. It was Estrada's failure to confirm Wang's credentials and the potentially improper approval of Wang that, in combination with additional instances of deficient work performance, led to the adverse personnel actions. The referee's statement that the department's reprimands indicated that their cause was Estrada's ''protect[ed] disclosure regarding [Wang's] credentials'' is incorrect. Neither of the reprimands indicate that Estrada was being disciplined for the disclosure rather than for Estrada's underlying conduct.

Even if we were to hold that the statutory presumption applies and that Estrada made out a prima facie case, the department rebutted this presumption.[11] The department submitted three union grievances explicitly holding that the same adverse employment actions Estrada challenged before the commission were taken for just cause. The trial court held that the referee's decision to exclude these decisions ''was clear error and an abuse of discretion'' because they ''establish a legitimate reason for each action, namely, the poor performance of [Estrada],'' and are ''relevant probative evidence'' that serves to ''rebut'' any presumption or inference of retaliation Estrada may have made at the prima facie stage of the *McDonnell Douglas* analysis.

---

[11] The trial court concluded that, even if the two year statutory presumption applied, it is rebuttable, and ''[t]he record here clearly and unmistakably rebuts the presumption.''

Dept. of Public Health *v.* Estrada

Evidence credited by the referee also supports the department's nonretaliatory justifications, including evidence that Estrada (1) had a history of declining work quality and performance improvement plans before her disclosure, (2) prepared the inaccurate letters she was initially reprimanded for—the second of which was submitted after she was put on notice of the problem with the Wang letter and the importance of not repeating it—and also failed to appropriately log the Wang complaint, and (3) continued to exhibit poor work quality after those incidents, including the failure to track and keep files, more problems communicating with her supervisors about appointment letters, and continued resistance to the issues identified in her ongoing performance improvement plan.

Estrada's first written reprimand was issued nearly one month after the disclosure, and then only after Estrada had again, less than one week after the Wang incident, submitted another letter to the department's commissioner for his signature without first confirming the facts reported in the letter. Thus, regardless of whether the two year statutory presumption applies, Estrada presented no evidence that contradicted the department's proffered reason for the adverse personnel actions.[12]

Significantly, and contrary to the referee's decision, at this procedural stage, the department's burden was only one of production, not persuasion. See, e.g., *Craine* v. *Trinity College*, 259 Conn. 625, 643, 791 A.2d 518 (2002); see also, e.g., *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) (when burden shifts, defendant "need not persuade the court that it was actually motivated by

---

[12] The referee concluded that the department's proffered reasons for discipline were pretextual but provided no explanation as to why it was pretextual to support that conclusion.

Dept. of Public Health *v.* Estrada

the proffered reasons"); *Texas Dept. of Community Affairs* v. *Burdine*, supra, 253 ("[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff"). Accordingly, the referee improperly held the department to a higher standard than was required when she concluded that the department must submit evidence that was "sufficiently credible to meet [the] burden of *persuasion . . . .*" (Emphasis added; internal quotation marks omitted.)

The interest served by addressing underlying misconduct is manifestly separate and distinct from that served by penalizing whistleblower activity, so it is imperative that the employee establish a causal connection between the adverse employment action and the whistleblowing activity itself. Estrada failed to do so. As the trial court concluded, "the record unmistakably points to the fact that Blaschinski and [the department] were not dissatisfied that [Estrada] made the *disclosure* that a mistake had been made. Blaschinski and [the department] were instead dissatisfied that the *mistake had been made in the first place*. Thus, the negative employment actions were taken, not because [Estrada] made the disclosure, but because [Estrada] made and repeated the mistake." (Emphasis added; footnotes omitted.)

Accordingly, we cannot conclude that there is substantial evidence in the administrative record to support the conclusion that the adverse personnel actions were caused by the disclosure itself rather than Estrada's underlying conduct.[13] See generally *Dolgner* v. *Alander*,

---

[13] The department also contends that, although an employee need only have a reasonable, good faith belief that a violation of state law occurred, Estrada lacked such a belief in this case. Given our conclusion in part III C of this opinion that Estrada failed to establish a causal connection, we need not decide whether a reasonable, good faith belief that there was a violation of state law is sufficient to afford an employee protection under § 4-61dd. Even if Estrada had such a reasonable, good faith belief, she failed to establish that the adverse personnel actions were taken as a result of her whistleblower disclosure. Similarly, we need not decide whether § 19a-200 requires acting directors of public health to have certain qualifications.

Dept. of Public Health *v.* Estrada

237 Conn. 272, 280–81, 676 A.2d 865 (1996) (discussing substantial evidence rule).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.